**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John I. WINSTON, Jr., Defendant– Appellant.**

**No. 94–1405.**

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1994.

Decided Sept. 12, 1994.

---

Michael A. Thill, Asst. U.S. Atty. (argued), Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN, for plaintiff-appellee.

Julie P. Verheye, Mishawaka, IN (argued), for defendant-appellant.

Before BAUER, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

John Winston pleaded guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He later moved to withdraw his guilty plea. He claimed that, because his lawyer had not provided him with pretrial discovery material, his decision to plead guilty was neither voluntary nor informed. The district court denied the motion to withdraw and sentenced Mr. Winston to 151 months' imprisonment. Mr. Winston now appeals the district court's denial of his motion, as well as aspects of the sentence it imposed. For the reasons that

follow, we affirm in part and dismiss in part for lack of jurisdiction.

## I

On April 23, 1993, a grand jury returned a one-count indictment charging Mr. Winston with possession with intent to distribute approximately two kilograms of cocaine under § 841(a)(1). After Mr. Winston pleaded not guilty to the charge, the district court set his trial for June 14. However, on June 10, four days before the start of the trial, Mr. Winston filed a petition to enter a change of plea. That same day, the court conducted a change of plea hearing pursuant to Federal Rule of Criminal Procedure 11, but deferred acceptance of the plea agreement pending the issuance of the presentence investigation report.[1]

On August 17, prior to sentencing, Mr. Winston moved to withdraw his guilty plea on the ground that it had not been made in a voluntary or informed manner. Specifically, Mr. Winston claimed that his attorney had failed to provide him with certain pretrial discovery material the government had made available, or even to provide him with summaries of that material. Following recusal of Mr. Winston's original counsel, Mr. Winston filed a memorandum in support of his motion to withdraw his plea and attached his affidavit. In the affidavit, Mr. Winston restated his main contention concerning his lawyer's failure to apprise him of discovery material.

Mr. Winston also asserted that he would not have pleaded guilty had he known of the discovery materials.

In an October 4, 1993 Memorandum and Order, the district court refused to grant Mr. Winston an evidentiary hearing and denied his motion to withdraw the guilty plea. The district court stated that the answers Mr. Winston had provided at the change of plea hearing contradicted his affidavit. For instance, Mr. Winston had stated unequivocally at the hearing both that his attorney had done all that Mr. Winston had wanted him to do, and that he was satisfied with his attorney's performance. Moreover, the plea agreement contained provisions stating as much.[2] According to the district court, Mr. Winston had an opportunity to explain the claims forming the basis of his motion to withdraw his plea, but chose not to do so. The court therefore concluded that Mr. Winston's current claim did not constitute a "fair and just reason" to withdraw his plea under Rule 32(d). Finally, the court noted that Mr. Winston had failed to explain in either his motion or his affidavit how the discovery material at issue—a thirteen page police report—would have altered his decision to enter a guilty plea. Rather, Mr. Winston simply made a conclusory allegation that the material provided a meritorious defense to the charge in the indictment.

Prior to sentencing, Mr. Winston moved to dismiss the indictment based on outrageous

---

**1.** The plea agreement provided that the sentence Mr. Winston would receive would be at the bottom of the applicable Sentencing Guidelines range. Accordingly, the district court stated at the change of plea hearing that "if after reviewing the presentence report I decide that I can't in good conscience give you that sentence at the bottom of the guideline range, I would let you withdraw the plea. I couldn't impose any sentence other than the minimum within that guideline range." Tr. 9. Toward the end of the proceeding, the court concluded: "The court now in light of the binding recommendation defers acceptance of the plea pending presentence investigation." Tr. 21. We think that, although the court did not expressly state that it was accepting the guilty plea but deferring its acceptance of the plea agreement, that is what it in fact did and intended to do.

Although Mr. Winston does not raise the issue, we note that there is no import in the fact that

Mr. Winston moved to withdraw his guilty plea prior to the district court's acceptance of the plea agreement. "[T]here is no absolute right to withdraw a plea prior to acceptance of the plea agreement by the court." *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). Rather, as our discussion below indicates, *see infra* part II.A, Rule 32(d)'s "fair and just reason" standard governs. *Id.* at 1104–06.

**2.** For instance, the plea agreement stated: "My lawyer has since informed me and has counseled and advised with me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case." ¶ 5. It also provided: "I believe and feel that my lawyer has done all that anyone could do to counsel and assist me, and that I now understand the proceedings in this case against me." ¶ 11.

government conduct and moved for a downward guidelines departure based on "sentencing manipulation." The court denied the motion to dismiss, but agreed to reconsider it at the close of evidence at the sentencing hearing. At the hearing, Mr. Winston testified that Pablo Sanchez, an old acquaintance, contacted him in March 1993 about getting together to socialize. Unbeknownst to Mr. Winston, Sanchez was working for the Indiana State Police as an informant. Sanchez eventually stopped by the nightclub where Mr. Winston worked and offered to sell Mr. Winston two kilograms of cocaine at $20,000 per kilogram. (Apparently Mr. Winston was targeted because he had purchased a kilogram of cocaine from Sanchez on a prior occasion.) According to Mr. Winston, he declined the offer and told Sanchez that he had no interest. Sanchez, however, stayed in contact, and, one day in early April 1993, gave Mr. Winston $500 at a time when Mr. Winston stated that he had no money. Later that day, Mr. Winston agreed to find a buyer for the cocaine, and the two met in a hotel room to transfer the cocaine. Mr. Winston testified that the two argued about who was going to carry the cocaine to the car. Mr. Winston claimed that Sanchez agreed to carry it after he told Sanchez that he had a gun and that "if anybody runs up on you I will shoot him." Tr. 42. Shortly after the two men exited the hotel room, the Indiana State Police arrested them. One of the state troopers testified that it was Mr. Winston, not Sanchez, who had possession of the two kilograms of cocaine.

On cross-examination, Mr. Winston was asked why he had testified at his change of plea hearing that he, and not Sanchez, had been in possession of the two kilograms of cocaine at the time of his arrest. Mr. Winston stated that he had lied at the change of plea hearing, tr. 48, and later admitted lying to law enforcement officials about his previous history with drug deals, tr. 55. Winston testified that his original attorney had told him to lie to make the change of plea hearing proceed smoothly.

The district court denied Mr. Winston's motion to dismiss the indictment and denied his motion for a downward departure based on sentencing manipulation. The court also held that a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 was warranted for Mr. Winston's testimony at the sentencing hearing concerning who had possession of the cocaine at the time of arrest. The same testimony, the court concluded, also demonstrated that Mr. Winston had not accepted responsibility for the offense. The ultimate offense level of 32 and criminal history of III resulted in a sentencing range of 151–188 months. In accordance with the plea agreement, the court sentenced Mr. Winston to 151 months' imprisonment.

## II

On appeal, Mr. Winston raises several issues. First, he submits that the district court erred in refusing to hold an evidentiary hearing to determine whether he had a "fair and just reason" for withdrawing his guilty plea. Second, Mr. Winston argues that the district court erred in enhancing his sentence for obstruction of justice. Relatedly, he contends that the government breached its plea agreement in arguing for the obstruction enhancement. Finally, Mr. Winston submits that the district court erred by refusing to grant a downward departure based on either the government's "sentencing manipulation" or for the allegedly low price of the cocaine pursuant to U.S.S.G. § 2D1.1, comment. (n. 17). We shall address each issue seriatim.

### A.

Mr. Winston's first argument concerns the district court's refusal to hold an evidentiary hearing to determine whether he had a "fair and just reason" to withdraw his guilty plea under Rule 32(d). Mr. Winston contends that he presented the district court with evidence that casts doubt on the validity of his plea. Specifically, Mr. Winston states that his affidavit makes clear that he did not enter his plea in an informed and voluntary manner because his counsel had not apprised him of relevant discovery material the government had turned over prior to trial. Instead, his counsel had told him that he (Mr. Winston) could not view the material until he pleaded guilty to the offense charged.

Mr. Winston also argues that the district court should not have based its decision to deny an evidentiary hearing on his responses at the change of plea hearing. In those responses, Mr. Winston indicated that his counsel had informed him of all he needed to know to enter an intelligent plea, and he stated that he was satisfied with his counsel's performance. Mr. Winston argues that it was natural for him to have answered as he did. At that time, he did not know that he was allowed to view the discovery material prior to entering his plea; after all, his attorney had told him as much. Mr. Winston submits that, if he had been able to examine the materials at issue, he would not have pleaded guilty to the offense charged.

■ Under Rule 32(d), a "court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." The standard for granting a Rule 32(d) motion is liberal, but one within the sound discretion of the district court. *United States v. Seavoy*, 995 F.2d 1414, 1420 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993); *United States v. Ellison*, 798 F.2d 1102, 1104 (7th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). We do not think the district court abused that discretion in this case. As the district court pointed out, Mr. Winston had ample opportunity at the change of plea hearing to inform the district court that he did not have sufficient information with which to make a rational plea decision. Instead of taking advantage of that opportunity, however, he expressly asserted the contrary.[3] District courts do not and need not treat lightly responses given under oath at a hearing conducted pursuant to Rule 11. As we stated in *Ellison:*

> Rule 11's provisions specifically seek to ensure that entry of a plea is not a meaningless act. Great care is taken when accepting pleas under Rule 11. Plea agreements are placed on the record, the voluntariness and accuracy of the plea is ascertained, and detailed advice is provided to the defendant concerning his rights

and the consequences of his plea as well as a determination that defendant understands these matters.

*Ellison*, 798 F.2d at 1106. We have therefore made clear that the record of a Rule 11 proceeding is entitled to a "presumption of verity," and that answers contained therein are binding. *United States v. Seybold*, 979 F.2d 582, 587 (7th Cir.1992) (citations omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993); *see also United States v. LeDonne*, 21 F.3d 1418, 1428 (7th Cir.1994). As a result, we cannot allow Mr. Winston to disavow the answers he gave as easily as he wishes. *See United States v. Price*, 988 F.2d 712, 717 (7th Cir.1993) (" 'A defendant who presents a reason for withdrawing his plea that contradicts the answers he gave at a Rule 11 hearing faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is "fair and just." ' ") (quoting *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir.1992)).

■ In concluding that the district court committed no reversible error in relying on Mr. Winston's statements at the change of plea hearing, we do not overlook Mr. Winston's contention that he did not know enough at the time he made the statements to have stated otherwise. *Cf. United States v. Giardino*, 797 F.2d 30, 32 (1st Cir.1986) ("The government relies chiefly on the fact that Giardino admitted his guilt at the plea hearing and also expressed satisfaction with his counsel. All this took place, however, before Giardino found out what he says is the truth."). Even if we disregard Mr. Winston's Rule 11 testimony and assume *arguendo* the truth of the facts he asserts, he has failed to allege, either in his motion or in his affidavit, facts that would constitute grounds for allowing withdrawal of his plea. Rather, "the allegations in [his] motion to withdraw the plea are mere conclusions." *Trussel*, 961 F.2d at 689; *United States v. Fountain*, 777 F.2d 351, 358 (7th Cir.1985), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). For instance, although he asserts that the discovery material to which he was

---

3. As the district court also pointed out, Mr. Winston represented that he had sufficient information to make a rational plea decision in the

written plea agreement as well. See *supra* note 1.

denied access would have altered his decision to plead guilty, he never explains why that is so. At the time the motion was made, he and his new counsel had ample opportunity to examine the material and could have provided such an explanation if one existed. The government has stated that the material at issue contained no *Brady* information; Mr. Winston has never controverted that assertion. We therefore do not think that, in light of the facts alleged, the district court abused its discretion in refusing to grant an evidentiary hearing. Such a hearing should be granted freely, but it need not be held when the defendant's motion fails to set forth a "fair and just reason" on its face. *See Trussel,* 961 F.2d at 689; *Fountain,* 777 F.2d at 358 n. 3; *see also Hill v. Lockhart,* 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985) (concluding in context of an ineffective-assistance challenge to a guilty plea that the defendant "alleged no special circumstances that might support the conclusion that he placed particular emphasis on [the undisclosed information] in deciding whether or not to plead guilty"); *Key v. United States,* 806 F.2d 133, 139 (7th Cir. 1986) (stating that, although the defendant alleges "that he would have pleaded differently and gone to trial" had he been advised differently, "merely making such an allegation is insufficient").

### B.

■ Mr. Winston next contends that the district court committed clear error in enhancing his offense level by two levels pursuant to U.S.S.G. § 3C1.1 for obstructing justice. At the change of plea hearing, Mr. Winston stated that he had possession of two kilograms of cocaine when arrested, and that he was planning to sell it. At the sentencing hearing, he testified that informant Sanchez actually had possession of the cocaine when the two were arrested, and that he (Mr. Winston) had carried a firearm to protect the cocaine. Mr. Winston now argues that any disparity between the two versions was only a matter of degree. He states, for instance, that his testimony at the sentencing hearing made clear that he "had the power and intent to control the cocaine." Appellant's Br. at 22. He submits that, unlike directly contra-dictory testimony that has served as the basis for prior enhancements for obstructing justice, *see, e.g., United States v. Lawrence,* 951 F.2d 751, 756 (7th Cir.1991); *United States v. Caicedo,* 937 F.2d 1227, 1234 (7th Cir.1991), his testimony at the sentencing hearing did not directly contradict his testimony at the change of plea hearing. Mr. Winston also contends that the district court's alternative basis for imposing the enhancement—lying to law enforcement authorities concerning his prior drug dealing activities—in no way affected the course of the proceedings in his case and therefore cannot be used as the basis for an obstruction enhancement.

The record before us shows that, after Mr. Winston testified at the sentencing hearing that Sanchez was in possession of the cocaine, the government confronted him on cross-examination with testimony he had given to the contrary at the change of plea hearing. After Mr. Winston acknowledged testifying at the change of plea hearing that he had possession of the two kilograms of cocaine, the government asked Mr. Winston, "Did you lie to the judge [at the change of plea hearing]?"; Mr. Winston responded, "Yes, I did." Tr. 48. On the basis of this testimony, the district court found that Mr. Winston had lied—not, however, at the change of plea hearing, as Mr. Winston had suggested. Rather, in light of Mr. Winston's testimony at the change of plea hearing and a state trooper's testimony at the sentencing hearing that Mr. Winston had been in possession of the cocaine when he was arrested, the district court found that Mr. Winston was lying at the sentencing hearing. The court thus found that Mr. Winston lied about who was in possession of the cocaine and that he lied about his testimony at the change of plea hearing (i.e., that he lied about lying). Tr. 113–14.

We think the record provides support for the district court's finding that Mr. Winston lied at the sentencing hearing. The district court, whose decision in this matter is reviewed under a deferential standard, was entitled to conclude that Mr. Winston's testimony was contradictory and that the difference in his accounts was more than a matter

of degree. We especially note that the district court believed that Mr. Winston thought the alteration material. Tr. 114. The district court was entitled to evaluate the testimony in light of the other testimony it heard. We cannot say that its finding was clearly erroneous. As a result, we shall not disturb the two-level enhancement of Mr. Winston's sentence for obstructing justice under U.S.S.G. § 3C1.1. *See United States v. Dunnigan,* — U.S. —, — – —, 113 S.Ct. 1111, 1116–17, 122 L.Ed.2d 445 (1993) (holding that obstruction enhancement is justified if the district court finds that the defendant falsely testified about a material matter with the intent to do so); *United States v. Emenogha,* 1 F.3d 473, 482 (7th Cir.1993) (same), *cert. denied,* — U.S. —, 114 S.Ct. 901, 127 L.Ed.2d 92 (1994). We therefore need not address the district court's alternative basis for the obstruction enhancement—that Mr. Winston had lied to investigators about his previous drug dealing activities. We note only that Mr. Winston's argument concerning the actual effect of his misrepresentation on the outcome of his case displays a fundamental misapprehension of the fact that U.S.S.G. § 3C1.1 "provides an increase for *attempts* to obstruct justice as well as actual obstruction of justice." *United States v. Gaddy,* 909 F.2d 196, 199 (7th Cir.1990).

Mr. Winston also argues that the government breached its plea agreement when it "urged" the district court to enhance his sentence for obstructing justice under U.S.S.G. § 3C1.1. Mr. Winston concedes that, because "breach of a plea agreement cannot be raised for the first time on direct appeal," *United States v. Eibler,* 991 F.2d 1350, 1353 (7th Cir.1993) (quoting *United States v. D'Iguillont,* 979 F.2d 612, 614 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1873, 123 L.Ed.2d 492 (1993)), we can examine his contention only for plain error. *Id.* Nonetheless, he claims the government's breach requires that he be allowed to withdraw his guilty plea.

■ We do not agree. First, the district court *sua sponte* requested the parties to address whether an enhancement for obstructing justice was warranted "in light of the testimony presented over the course of the two days of the hearing." Tr. 105. Although the government did point out to the court the discrepancies in Mr. Winston's testimony, it did so only after the court asked the parties to address the matter. Even then the government only passively concluded that "there is evidence before this court from which the court could enhance" Mr. Winston's sentence under U.S.S.G. § 3C1.1. Tr. 111. Moreover, even if we assume *arguendo* that the government's actions constituted a recommendation of an obstruction enhancement, the government did not thereby breach the plea agreement. To be sure, paragraph (*l* )(i) of the plea agreement states that the government cannot recommend an enhancement under U.S.S.G. § 3C1.1. The agreement also provides, however, for Mr. Winston "to testify truthfully and completely," ¶ (e); the agreement states that "if I provide false information, I may be prosecuted for perjury, for giving a false statement, or testifying falsely," ¶ (f). Thus, it was Mr. Winston, not the government, who failed to comply with the provisions of the plea agreement, and it is he who must abide with the consequences. *Cf. United States v. Osborne,* 931 F.2d 1139, 1164 (7th Cir.1991).

### C.

Finally, Mr. Winston submits that the district court erred in refusing to make a downward departure on either of two grounds. First, he argues that the government's sole purpose in planning the reverse sting operation to include two kilograms of cocaine—as opposed to some lesser quantity—was to trigger a mandatory minimum sentence under the guidelines. According to Mr. Winston, the government's conduct amounted to "sentencing manipulation," which in his case and others allows the government to inflate artificially a defendant's sentence. *See United States v. Calva,* 979 F.2d 119, 122 (8th Cir.1992) ("This court has intimated that there may exist a 'sentencing entrapment' claim that arises when the government ratchets up a defendant's drug sales or other conduct merely to increase his sentence."); *United States v. Connell,* 960 F.2d 191, 194 (1st Cir.1992) (discussing "sentencing factor manipulation"). Second, he states that the

fact that informant Sanchez did not demand any money from him at the time the cocaine was delivered amounts to a transaction in which the drug price was below market value. As a result, Mr. Winston argues that the district court should have granted a downward departure pursuant to U.S.S.G. § 2D1.1, comment. (n. 17). Mr. Winston acknowledges that our caselaw precludes us from examining a district court's discretionary refusal to depart downward, but requests that we reconsider our rule in this case.

We decline Mr. Winston's request to re-examine our well-established rule that we "lack jurisdiction to consider a defendant's appeal of a legal sentence that is *within* the applicable sentencing guideline range." *United States v. Franz*, 886 F.2d 973, 974 (7th Cir.1989). As a result of that rule, a district court's departure-related determinations, including refusals to depart, are not appealable. *Id.* at 978. Thus, "once we have determined that the district judge has exercised his discretion in denying [a downward departure], and has not been deflected from that exercise by some legal misconception, our function as a reviewing court is at an end." *United States v. Mittelstadt*, 969 F.2d 335, 337 (7th Cir.1992). In this case, Mr. Winston asserts no legal error with the district court's decision not to depart

downward, *see United States v. Gomez*, 24 F.3d 924, 927 (7th Cir.1994) (reviewing failure to grant downward departure for legal error) *petition for cert. filed*, (U.S. Aug. 15, 1994) (No. 94–5654), but asserts only that the district court should have used its discretion to depart downward. He acknowledges that the district court was fully aware that it had the authority to make a downward departure on the grounds that Mr. Winston presented to it, but decided against doing so.[4] That is all we need determine in order to conclude that we lack jurisdiction to review the district court's decision not to depart downward. *United States v. Evans*, 994 F.2d 317, 325 (7th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993); *see also United States v. Thomas*, 11 F.3d 732, 735 (7th Cir.1993), *petition for cert. filed*, (U.S. May 12, 1994) (No. 93–9751).[5]

### Conclusion

For the foregoing reasons, we affirm in part the judgment of the district court and dismiss in part for lack of jurisdiction.

AFFIRMED in part and DISMISSED in part.

---

4. The district court chose not to depart downward on the first ground Mr. Winston asserted because there was no evidence of "sentencing manipulation," even assuming its viability as a legal theory. *Cf. United States v. Cotts*, 14 F.3d 300, 306 n. 2 (7th Cir.1994) (expressing doubt as to the validity of "sentencing manipulation" and concluding that, "[i]n any event, [the defendant] presents to us no evidence that manipulation of any order occurred in his case"). The transaction was a one-time deal, and informant Sanchez determined the quantity of cocaine he would offer Mr. Winston. As for Mr. Winston's theory under U.S.S.G. § 2D1.1, comment. (n. 17), the district court noted that the fact that money did not change hands means little in light of the extensive use of brokerage and fronting arrangements in drug transactions. Furthermore, the evidence showed that the price of the cocaine was within the market range.

5. Mr. Winston also contends that the district court erred in not dismissing the indictment against him in light of the government's "unconscionable" and "outrageous" conduct in the course of investigating him. *See United States v. Miller*, 891 F.2d 1265, 1267 n. 2 (7th Cir.1989)

(stating that, despite questions regarding its validity, "the doctrine of outrageous government conduct has not been expressly disavowed by the Supreme Court or by this circuit"). We shall not address this argument at length. First, Mr. Winston does not contest the government's argument that he has waived this argument by failing to raise it prior to pleading guilty. *See United States v. Duncan*, 896 F.2d 271, 274 (7th Cir. 1990) (stating that "an outrageous governmental conduct defense must be made the subject of a pre-trial motion under Rule 12(b)(2)"); *United States v. Brown*, 870 F.2d 1354, 1358 (7th Cir. 1989) ("Once a plea of guilty has been entered, non-jurisdictional challenges to the constitutionality of the conviction are waived and only the knowing and voluntary nature of the plea may be attacked."); *see also United States v. Montilla*, 870 F.2d 549, 553 (9th Cir.1989) (holding that guilty plea constituted waiver of outrageous governmental conduct defense), *amended*, 907 F.2d 115 (9th Cir.1990). Second, the governmental conduct at issue in this case "involved no more than a [reverse] sting operation and could not be characterized as shocking to the universal concept of justice." *United States v. Koller*, 956 F.2d 1408, 1416 (7th Cir.1992).