83 F.3d 424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph C. TARDIEFF, Defendant-Appellant.
 No. 95-1563.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 17, 1996.
Decided April 17, 1996.
 
 Before CUMMINGS, BAUER and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Appellant Joseph C. Tardieff pled guilty to one count of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 841, 846, and was sentenced to 105 months' imprisonment. Tardieff appealed, and his attorney filed an Anders brief.[1] We grant the motion to withdraw and dismiss the appeal.
 
 FACTS
 
 2
 In June 1993, law enforcement officials were investigating the shipment of cocaine from the Caribbean to the United States. During the course of the probe, a confidential informant ("CI") learned that Joseph Tardieff of Atlanta, Georgia was connected to the drug dealers. From June/July 1993 through November 1993, the CI was in frequent telephone contact with Tardieff regarding the logistics and circumstances of a five kilogram cocaine purchase by Tardieff. The telephone calls were monitored, with the CI's consent, by law enforcement officials. In the interim, Tardieff was seeking "investors" for the purchase.
 
 
 3
 In November 1993, Tardieff made contact with Daryl Riding, who was interested in making a cocaine purchase, and who also knew of other interested buyers in Indianapolis, Indiana: Antoine Craig, John Alexander, Anthony Thomas, and Jeffrey Hammonds. The group scheduled a meeting with the CI in an Indianapolis motel to effect the purchase of 1- 1/2 kilograms of cocaine. Tardieff and Riding were apparently the only individuals in actual contact with the CI prior to the scheduled meeting. Tardieff's role appeared to be that of a middleman and primary negotiator. The purchase price to Tardieff was to be $17,000, and the price to the actual buyers was to be $23,000. The $6000 difference was to be Tardieff's share for arranging the transaction.
 
 
 4
 On the eve of the transaction, some of the purchasers developed "cold feet," but Tardieff convinced them to go through with the deal by offering a $500 discount. Tardieff also negotiated, unsuccessfully, with the CI to keep the Indianapolis and Atlanta buyers separate. Ultimately, on November 19, 1993, Tardieff and Alexander met with the CI in a motel room (monitored with videotape cameras), while the other purchasers waited in their cars. The CI asked whether either Tardieff or Alexander had a gun. Tardieff acknowledged that Alexander was armed. Alexander handed the gun to Tardieff, and Tardieff handed it over to the CI. The CI counted the purchase money and signalled an undercover U.S. Customs Service Agent to bring in the cocaine. Alexander examined the cocaine and gave his approval. Tardieff and Alexander were then arrested, as were the other purchasers in the parking lot. A total of $22,860 had been brought to the hotel room, and another $11,400 was found hidden in one of the cars. The defendants were charged with conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 841, 846 ("Count I"), and carrying or using a firearm in connection with a drug-trafficking offense, 18 U.S.C. § 924 ("Count II").
 
 
 5
 On April 18, 1994, Tardieff, represented by David Martenet, pled guilty to both counts. (Record # 19). However, on June 30, 1994, Tardieff filed a pro se motion to withdraw the plea on the grounds of ineffective assistance of counsel. (See Record # 20). Judge Tinder appointed standby counsel, David Cook, for Tardieff and held a hearing on the matter. Judge Tinder granted Tardieff's motion on September 13, 1994. (See Record # 33). The court did so somewhat reluctantly, given the extensive plea hearing that had taken place and the excellent reputation of defense counsel, but gave Tardieff the benefit of the doubt that Tardieff and counsel had a breakdown in communications. (Id. at 9-10).[2] Cook was appointed to represent Tardieff from then forward.
 
 
 6
 On December 5, 1994, Tardieff filed a pro se motion to dismiss the indictment on the grounds of perjury, prejudice, lack of probable cause, selective prosecution, prosecutorial misconduct, and entrapment. (Record # 46). The district judge struck the pleading as improper, because Tardieff was represented by counsel. (Record # 47.) The court also noted the claims appeared to be of dubious merit.
 
 
 7
 Tardieff again pled guilty to Count I on January 19, 1995. (See Record # 51, plea agreement; Record # 71, plea transcript). At the plea hearing, Judge Tinder specifically ascertained that Tardieff was aware that by pleading guilty he was waiving all his prior claims of government misconduct. Judge Tinder also made certain that all Tardieff's misgivings regarding the first plea proceeding had been dealt with. Customs Service Agent Dills' testimony provided the factual basis for the plea. Tardieff was sentenced on February 17, 1995. (Record # 55; Record # 67, sentencing transcript). The Probation Office calculated the offense level at 29, which included a base offense level of 26, pursuant to U.S.S.G. 2D1.1(c)(7) (in excess of 500 grams of cocaine), a two point increase for possession of a firearm during the offense, pursuant to U.S.S.G. § 2D1.1(b)(1), a three point increase for acting as a supervisor or manager, pursuant to U.S.S.G. § 3B1.1(b), and a two level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). Tardieff's criminal history category was I, as Tardieff had no prior convictions. However, the Presentence Report ("PSR") noted that Tardieff had been arrested on August 17, 1993 for his part in smuggling two pounds of marijuana. In that offense, Tardieff had been arrested when he took delivery of the drugs from the courier. The guidelines range was 87-108 months. The PSR's statement of facts indicated Tardieff was the driving force in the conspiracy. In addition, the PSR also included Tardieff's version of the offense, in which Tardieff conceded that he took part in the narcotics conspiracy, but only as a somewhat reluctant middleman. Tardieff's only objection to the sentencing calculations was the enhancement under § 3B1.1(b). Both Tardieff and Customs Agent Dills testified at sentencing regarding the offense. Dills also authenticated the facts presented in the PSR. Judge Tinder rejected Tardieff's account as incredible, and noted that he had the benefit of having heard the codefendants' pleas. Judge Tinder sentenced Tardieff to 105 months. On appeal, Cook was discharged and Brian Baldwin was appointed to represent Tardieff.
 
 ANALYSIS
 
 8
 In his Anders brief, counsel raises the following issues: (1) that the plea was voluntary; (2) that counsel was not ineffective in disregarding the potential entrapment defense and recommending a plea; (3) that the role in the offense adjustment was proper; (4) that the firearm adjustment was appropriate; and (5) that any claim regarding disparate sentences would be frivolous. In his Circuit Rule 51 response, Tardieff argues that (1) he was not a manager or supervisor; (2) there is no factual basis for the manager/supervisor adjustment; (3) counsel was ineffective for failing to object to the PSR; (4) the government engaged in outrageous conduct and entrapped Tardieff; (5) the witnesses' statements were inconsistent (perjury); (6) the prosecutor engaged in misconduct in his argument at sentencing; (7) the enhancement for possession of a weapon was improper; and (8) there is an impermissible sentencing disparity among the codefendants. In addition to examining these issues, this court makes an independent review of the record. If we conclude that there are no viable issues to appeal, we will grant the motion to withdraw and dismiss the appeal. See United States v. Kellum, 42 F.3d 1087, 1096 (7th Cir.1994).
 
 
 9
 Our analysis begins with the plea itself. Our review indicates that the district judge complied with all the requirements of Fed.R.Crim.P. 11 and engaged in a lengthy and very thorough colloquy with Tardieff. There is nothing to indicate the plea was anything but knowing and voluntary.
 
 
 10
 Tardieff does not explicitly challenge the voluntariness of his guilty plea, and this has fatal consequences for several of his claims. A defendant's plea of guilty "waives all non-jurisdictional defenses including constitutional violations not logically inconsistent with the valid establishment of factual guilt." United States v. Nash, 29 F.3d 1195, 1201 (7th Cir.1994). See also United States v. Higgins, 75 F.3d 332, 333 (7th Cir.1996) (unconditional plea surrendered all objections to pretrial decisions); United States v. Bell, 70 F.3d 495, 496-97 (7th Cir.1995). This waiver includes claims of outrageous government conduct and entrapment. See United States v. Winston, 34 F.3d 574, 581 n. 5 (7th Cir.1994); United States v. Nunez, 958 F.2d 196, 200 (7th Cir.1992), cert. denied, 113 S.Ct. 168 (1992).[3]
 
 
 11
 Both counsel and Tardieff raise issues regarding the effectiveness of counsel. Generally, ineffective assistance claims must be brought in a § 2255 proceeding rather than on direct appeal, unless the claim is based entirely on the trial court record. McCleese v. United States, 75 F.3d 1174, 1178 (7th Cir.1996). Tardieff's claims are based to a large degree on matters outside the trial record. As such, his claims must be made in a § 2255 proceeding. Counsel's claims, however, seem to relate to matters of record.
 
 
 12
 To show ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient (performance prong), and that the deficient performance deprived the petitioner of a fair proceeding whose result was reliable (prejudice prong). Williams v. Washington, 59 F.3d 673, 679 (7th Cir.1995). In the context of a guilty plea, the prejudice prong can be restated as a reasonable probability that, but for counsel's errors, the petitioner would have gone to trial instead of pleading guilty. Banks v. Hanks, 41 F.3d 1187, 1189 (7th Cir.1994). Counsel is correct that there is nothing questionable about trial counsel recommending a plea, given the strength of the government's evidence and the potential exposure to a much longer sentence if the case went to trial. Counsel is also correct that trial counsel was not ineffective in electing not to raise an entrapment defense.[4]
 
 
 13
 A valid entrapment defense requires the proof of two related elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in criminal conduct. United States v. King, 75 F.3d 1217, 1223 (7th Cir.1996). Before a defendant can raise the defense, he must offer sufficient evidence of both the government's inducement and his own lack of predisposition. Id. at 1224. Affording the defendant an opportunity or facility for the commission of the offense does not constitute entrapment. Id. Typical factors considered in assessing predisposition include: (1) the defendant's character and reputation; (2) whether the suggestion of criminal activity was made by the government; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant evinced a reluctance to commit the offense, overcome only with repeated inducement or persuasion; (5) the type of inducement offered by the government. Id. Repeated solicitations by government agents, absent coercion, does not provide a basis for an entrapment defense. United States v. Akinsanya, 53 F.3d 852, 858 (7th Cir.1995). The record indicates the prospects of an entrapment defense were limited. While the government did make repeated solicitations to Tardieff, there is no evidence of coercion. Further, once Tardieff found likely buyers, he pursued the matter with skill and enthusiasm. Given his prior involvement in a drug offense, his profit motive, and the total absence of any hesitation or reluctance, a successful entrapment defense was unlikely. Failure to pursue a weak entrapment defense is not ineffective assistance. Cf. United States v. Caban, 962 F.2d 646 (7th Cir.1992).
 
 
 14
 As to sentencing, Tardieff and counsel focus on the same areas, the adjustment for possessing a firearm under § 2D1.1(b)(1), the adjustment for being a manager or supervisor under § 3B1.1(b), and the sentencing disparity between the codefendants. The last claim will be addressed first. Counsel is correct that any claim of disparate sentencing would be frivolous. If a sentence is within the applicable guideline range, a defendant is not entitled to have his sentence overturned simply because another defendant was sentenced differently. United States v. Edwards, 945 F.2d 1387, 1398-99 (7th Cir.1991), cert. denied, 112 S.Ct. 1590 (1992). See also United States v. Dillard, 43 F.3d 299, 311 (7th Cir.1994).
 
 
 15
 As to the firearm enhancement, counsel only notes there was no factual basis for the enhancement in the plea hearing. Tardieff argues that there is no reliable evidence presented anywhere that he possessed the firearm, given most of the evidence was provided by a codefendant, and that it is unfair to enhance his sentence based upon the dismissed charge.
 
 
 16
 A criminal defendant has a due process right to be sentenced on the basis of reliable information. United States v. Vold, 66 F.3d 915, 918 (7th Cir.1995). Further, the government must establish the appropriateness of a sentencing enhancement by a preponderance of the evidence. Id. at 920. The testimony of one witness, even if arguably biased against the defendant, can be sufficient to support a finding of fact at sentencing. Id. Further, the judge may consider information beyond the scope of trial in sentencing the defendant, including the presentence report and information obtained during the plea hearings of co-defendants. United States v. Nesbitt, 852 F.2d 1502, 1521 (7th Cir.1988), cert. denied, 488 U.S. 1015 (1988). See also United States v. Mustread, 42 F.3d 1097, 1101-2 (7th Cir.1994); United States v. Morales, 994 F.2d 386 (7th Cir.1993).
 
 
 17
 The district judge properly relied on the PSR and Agent Dills' testimony to support the firearm enhancement. Tardieff never challenged the PSR on this point, and his plea agreement specifically acknowledged that the enhancement was appropriate. (Record # 51 at 2). A defendant's offense level may be enhanced pursuant to U.S.S.G. § 2D1.1(b)(1) if: (1) a co-conspirator possessed a firearm during acts in furtherance of the conspiracy; and (2) the co-conspirator's possession of the firearm was reasonably foreseeable to the defendant. Vold, 66 F.3d at 920. The PSR and Agent Dills' testimony indicate Alexander was carrying a firearm to the drug transaction and that Tardieff was aware of that fact.[5] The enhancement was proper in these circumstances.
 
 
 18
 The issue regarding Tardieff's role in the offense is somewhat closer, but also meritless. This court will not disturb the district court's assessment that a defendant played an aggravating role in the offense, unless that decision is clearly erroneous. United States v. Granado, 72 F.3d 1287, 1290 (7th Cir.1995). We also note that middlemen are not immune from the application of § 3B1.1. United States v. Young, 34 F.3d 500, 508 (7th Cir.1994). Section 3B1.1(b) provides: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by three levels." U.S.S.G. § 3B1.1(b). In distinguishing a leadership or organizational role from mere management or supervision, a court should consider the following factors:
 
 
 19
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 20
 U.S.S.G. § 3B1.1, comment (n. 4). This court has relied upon these same factors in ascertaining whether a defendant qualifies as a supervisor or manager. United States v. Fones, 51 F.3d 663, 665 (7th Cir.1995).
 
 
 21
 The district court had the benefit of the PSR, Agent Dills' testimony, Tardieff's testimony, and what he learned in taking the codefendants' pleas in assessing Tardieff's role in the offense. Judge Tinder specifically rejected Tardieff's claim that he was a passive middleman. The district judge's detailed analysis of the seven factors indicates Tardieff was properly deemed a manager or supervisor. (Record # 67 at 42-45).[6] However, Tardieff could argue that an "adjustment" under § 3B1.1 was improper, because he did not "control" at least one participant. This court has held that, since the 1993 amendments to the guidelines, a defendant must control at least one person to qualify for an adjustment, rather than an upward departure, under § 3B1.1(b). Fones, 51 F.3d at 668-69 (citing U.S.S.G. § 3B1.1, comment (n. 2)).[7] However, the defendant need not control every participant. Dillard, 43 F.3d at 307. In addition, this court has held that recruitment is sufficient to establish control over another participant. Fones, 51 F.3d at 670 n. 5. Tardieff's claim fails because the district court specifically found that Tardieff recruited the chief recruiter, Riding. (Record # 67 at 42-43).
 
 
 22
 Lastly, Tardieff's criminal history category, offense level, and guideline range were properly calculated, and the judge complied with the requirements of Fed.R.Crim.P. 32 and selected a sentence within the guideline range.[8]
 
 
 23
 As our review has located no nonfrivolous issue which warrant review on appeal, THE MOTION TO WITHDRAW IS GRANTED AND THE APPEAL DISMISSED.
 
 
 
 [1]
 See Anders v. California, 386 U.S. 738 (1967). Per Circuit Rule 51(a), Tardieff was notified of his counsel's actions and given the opportunity to respond. Tardieff has done so, raising several issues which are addressed herein
 
 
 [2]
 The court noted that while Tardieff appeared to only be challenging his plea to Count II, if counsel was ineffective as to one count he was ineffective as to both. (Record # 33 at 6.)
 
 
 [3]
 We parenthetically note the outrageous government conduct doctrine is of dubious viability, see United States v. Garcia, No. 93-2512, slip op. at 3, (7th Cir. March 22, 1996), and a simple reverse sting operation would not, at any rate, qualify as outrageous government conduct. Winston, 34 F.3d at 581 n. 5
 
 
 [4]
 In his sworn statements at his second plea hearing, Tardieff indicated he was satisfied with counsel's investigation of the claim and noted he always intended to plead guilty to Count I, and only withdrew his first plea because he did not believe he was guilty of Count II. (Record # 71 at 10, 25-26)
 
 
 [5]
 The factual basis presented at the plea hearing included the statement that the search of Tardieff, Alexander and the motel room yielded a firearm. (Record # 71 at 22)
 
 
 [6]
 The district court also indicated Tardieff could have even been properly sentenced as an organizer or leader
 
 
 [7]
 There is some conflict in Seventh Circuit law on this point. At minimum, a defendant is not required to control another participant for a two point increase under § 3B1.1(c). See United States v. Bush, No. 95-2079, slip op. (7th Cir. March 20, 1996); United States v. Granado, 72 F.3d 1287 (7th Cir.1995)
 
 
 [8]
 Tardieff also argues the prosecutor engaged in misconduct in his argument at sentencing. The record indicates that the prosecutors' argument, while aggressive, drew fair inferences from the record. That Tardieff disagreed with the PSR does not prevent the prosecutor from arguing matters within it