**UNITED STATES of America, Plaintiff,**

v.

**Leonard George MILLER, Defendant.**

**No. 96–CR–6065L.**

United States District Court,
W.D. New York.

April 30, 1998.

Christopher Paul Tuite, U.S. Attorneys Office, Rochester, NY, for U.S.

Anthony F. Leonardo, Jr., Rochester, NY, Michael J. Tallon, Michael J. Tallon, P.C., Scottsville, NY, for Leonard George Miller.

*DECISION AND ORDER*

. LARIMER, Chief Judge.

**INTRODUCTION**

Defendant, Leonard George Miller, was charged in a superseding indictment re-

turned on January 9, 1997,[1] with violations of various statutes in connection with his alleged involvement in a conspiracy to distribute heroin and cocaine. Miller was named in nineteen of the indictment's thirty-six counts. On September 25, 1997, pursuant to a written plea agreement, Miller (who was at that time represented by Anthony F. Leonardo, Jr., Esq.) pleaded guilty to Count One of the indictment, which charged him with a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846. The agreement provided that, because of Miller's criminal history, he would be subject to a mandatory term of life imprisonment without release, but that, subject to Miller's compliance with the terms and conditions of the agreement concerning his cooperation with the Government, the court could sentence him to a term of imprisonment of no less than fifteen years.

I accepted Miller's plea, but set no sentencing date at that time, since the appropriate sentence would depend in part on Miller's future cooperation. Since it was undisputed that Miller would be sentenced to at least fifteen years imprisonment, however, he was directed to self-surrender to the United States Marshal's Service on January 5, 1998 to begin serving his sentence.

On December 19, 1997, over twelve weeks after he had pleaded guilty and sixteen days before his self-surrender date, Miller, now represented by Michael J. Tallon, Esq., filed a motion to withdraw his guilty plea pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure. The basis for the motion is Miller's claim that Leonardo rendered ineffective assistance of counsel by failing to look into certain factual and legal matters concerning the plea, and coerced Miller into pleading guilty.

## FACTUAL BACKGROUND

On September 5, 1996, Miller appeared at the Federal Building in Rochester, New York in connection with his supervised release stemming from a 1994 conviction for conspiracy to distribute heroin. Agents of the Drug Enforcement Administration ("DEA") had been investigating the alleged activities underlying the indictment in the instant case since at least July 1996. When Miller arrived on September 5, he was questioned by DEA agents. He allegedly made some incriminating statements.

The next day, Miller contacted Leonardo concerning his contact with the agents. There is some dispute about whether Leonardo agreed to represent Miller at that time, but it is undisputed that at some point prior to November 14, 1996, Miller did retain Leonardo as his attorney.

On Leonardo's advice, Miller continued to cooperate with the DEA. Leonardo also began to discuss a possible plea agreement with Assistant United States Attorney Christopher P. Tuite, who was handling the case for the Government. Based on Miller's criminal record, which includes three felony drug convictions, the attorneys agreed that he would be subject to 21 U.S.C. § 841(b)(1)(A), which provides that a person convicted of any one of certain specified drug crimes who has previously been convicted of two or more drug offenses "shall be sentenced to a mandatory term of life imprisonment without release . . ."

Eventually Tuite and Leonardo worked out an agreement under which Miller would plead guilty to Count One, with the understanding that he would be subject to a mandatory life sentence. However, the agreement also provided that, subject to Miller's satisfactory cooperation with the Government as provided for elsewhere in the agreement, the court at the time of sentencing could impose a sentence of no less than fifteen years imprisonment.

Miller now claims that Leonardo pressured him into accepting this agreement by telling him that his only alternative was to go to trial, where a guilty verdict would mean a sentence of life imprisonment with no chance of release. Leonardo denies pressuring Miller, though he and the Government concede that he advised Miller that this was the best deal Leonardo thought he could get based on the facts of the case.

---

1. The original indictment, which was filed on December 5, 1996, named only one defendant, Leon Dukagjini. The superseding indictment was the first in which Miller was named.

Miller was originally scheduled to enter his guilty plea on September 18, 1997. When he arrived at the courthouse, however, he expressed some hesitation about the matter to his attorney. When this was communicated to the court, I postponed the matter one week, to September 25. I stated to Miller, "[I]t's a big decision to plead guilty ..., but if you need some time to think this over, you should have that time." Transcript ("Tr."), Sept. 18, 1997, at 3. I also made clear that there was no pressure on Miller to plead guilty rather than go to trial, stating, "Whatever you decide, the Court will certainly respect that." Tr. at 5.

The parties reconvened as scheduled on September 25, and Miller went forward with his guilty plea. The thirty-seven page transcript of the plea proceeding is replete with statements that Miller made under oath reflecting Miller's awareness of his rights, his comprehension of the terms of the agreement, and his willingness to plead guilty pursuant to the agreement, as the following excerpts reveal:

THE COURT: ... Do you think now you have had enough time to decide what you want to do in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you think you have fully explored all of your options, as it were, with your lawyer?

THE DEFENDANT: Yes, your Honor.

Tr., September 25, 1997, at 4.

THE COURT: So that even though there's guideline calculations done here, ... because of Mr. Miller's prior record and the drug amount here, the statute trumps the guidelines and provides that I must impose a mandatory term of life imprisonment without release.

MR. TUITE: That's correct.

MR. LEONARDO: That's true, your Honor.

THE COURT: Mr. Miller, do you understand that?

THE DEFENDANT: Yes, sir.

Tr., at 13–14.

THE COURT: ... [I]f the government thinks your cooperation has been terrific and I agree, the best you can do or the lowest I can go, to put it another way, is fifteen years.

THE DEFENDANT: Yes, your Honor.

Tr., at 15.

THE COURT: ... [E]ven if I depart, there's no commitment or promise, as I read this agreement, that I'm going to give you fifteen years. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: ... [I]f the Court departs, it could be anywhere between mandatory life to fifteen years. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And the agreement specifically provides that you can't ask for any other kind of departure. This is it. Do you understand that?

THE DEFENDANT: Yes, sir.

Tr., at 15–16.

THE COURT: ... I guess, to use the vernacular, the sky is the limit in terms of what the sentence should be, if mandatory life is what the statute provides for. Do you understand that, Mr. Miller?

THE DEFENDANT: Yes, your Honor.

THE COURT: ... [T]here's no way I can tell you what the sentence is going to be, because I don't know what it is. We have just got to be straight and honest with each other. That's the fact here.

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that?

THE DEFENDANT: Yes, sir.

Tr., at 17–18.

THE COURT: ... I take it, Mr. Miller and Mr. Leonardo, by this concession at paragraph 2, that Mr. Miller admits there were these prior convictions, and he is not challenging the legitimacy or the constitutionality of those sentences.

MR. LEONARDO: No, your Honor.

THE COURT: Is that right, Mr. Miller?

THE DEFENDANT: Yes.

Tr., at 18–19.

THE COURT: ... Well, Mr. Miller, again, I think you told me previously you

thought you had enough time to talk all of this over with your attorney. Do you repeat and reaffirm that to me now?

THE DEFENDANT: Yes, your Honor, I have.

Tr., at 23.

THE COURT: ... Mr. Miller, has anybody forced you or threatened you to get you to sign this paper and plead guilty here today?

THE DEFENDANT: No, your Honor.

Tr., at 26.

THE COURT: ... I would like to hear it orally from you and reaffirm that in fact those things set forth at paragraph 6A [the factual predicate] are true and accurate and that's what you did.

THE DEFENDANT: Yes, they are, your Honor. I have read it, and yes, it is true.

THE COURT: At paragraph B, I guess, memorializes the agreement as to the drug quantity in this case.

MR. LEONARDO: Yes, your Honor.

THE COURT: Defense agrees to that?

THE DEFENDANT: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Mr. Miller, anything—any questions even now of me or your lawyer?

THE DEFENDANT: No, your Honor.

THE COURT: Okay. Mr. Leonardo has helped you throughout this process in this important matter. Are you satisfied with his help and advice in this important matter?

THE DEFENDANT: Yes, sir.

Tr., at 27–28.

THE COURT: Mr. Miller, is this still something you're prepared to do this morning?

THE DEFENDANT: Yes, sir.

THE COURT: No doubt or hesitancy?

THE DEFENDANT: None, sir.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Mr. Miller, have you reviewed that count [One] with your lawyer, which charges this particular offense that's set forth in the plea agreement?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: If you would like me to read it all I can.

MR. LEONARDO: We would waive a reading. I have read it to Mr. Miller many times, and he's read it, your Honor.

THE COURT: Mr. Miller, is that all right with you?

THE DEFENDANT: That's fine, sir.

THE COURT: Mr. Miller, as to count 1 of this indictment, pursuant to the plea agreement, how do you plead at this time, guilty or not guilty?

THE DEFENDANT: Guilty.

Tr., at 32–33.

## DISCUSSION

Rule 32(e) of the Federal Rules of Criminal Procedure provides that the court may grant a motion for leave to withdraw a guilty plea upon a showing of a "fair and just reason" for doing so. Nonetheless, "it is basic that '[a] defendant has no absolute right to withdraw his guilty plea.'" *United States v. Torres,* 129 F.3d 710, 715 (2d Cir. 1997) (quoting *United States v. Williams,* 23 F.3d 629, 634 (2d Cir.)), *cert. denied,* 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994). "The defendant bears the burden of showing that there are valid grounds for relief." *United States v. Maher,* 108 F.3d 1513, 1529 (2d Cir.1997).

In determining whether a "fair and just reason" exists to grant a motion to withdraw a guilty plea, the court may consider various factors, including: the amount of time that has elapsed between the plea and the motion; whether the defendant is asserting his innocence; the likely voluntariness of the plea; and any prejudice to the Government. *Torres,* 129 F.3d at 715; *United States v. Doyle,* 981 F.2d 591, 594 (1st Cir. 1992). "One especially important consideration is the defendant's answers to the questions posed at his Rule 11 hearing," *United States v. Trussel,* 961 F.2d 685, 689 (7th Cir.1992), which "carry a strong presumption of veracity ..." *Torres,* 129 F.3d at 715

(citing *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). Because "answers contained in [the plea proceeding] are binding," a court "cannot allow [a defendant] to disavow the answers he gave as easily as he wishes." *United States v. Winston,* 34 F.3d 574, 578 (7th Cir.1994). Therefore, a "defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Id.*

■ In addition, while an evidentiary hearing may be appropriate where a defendant has demonstrated factual issues surrounding the voluntariness or general validity of his plea, no hearing is required "if the movant's allegations 'merely contradict[ ][his] earlier statements made under oath at his plea allocution.'" *Maher,* 108 F.3d at 1529 (quoting *United States v. Gonzalez,* 970 F.2d 1095, 1101 (2d Cir.1992)) (brackets in original); *accord Torres,* 129 F.3d at 715.

■ It is plain, then, that a "defendant who presents a reason for withdrawing his plea that contradicts the answers he gave at a Rule 11 hearing faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is 'fair and just.'" *Trussel,* 961 F.2d at 689. Rule 11 "provides a thorough hearing [at the time of the plea] to determine the voluntariness and intelligence of guilty pleas, and ... defendants afforded such a hearing should not be easily let off the hook when they feel like changing their minds." *United States v. Coonce,* 961 F.2d 1268, 1276 (7th Cir.1992).

The reason for this is simple: " '[s]ociety has a strong interest in the finality of guilty pleas,' and allowing withdrawal of pleas not only 'undermines confidence in the integrity of our judicial procedures,' but also 'increases the volume of judicial work, and delays and impairs the orderly administration of justice.' " *Maher,* 108 F.3d at 1529 (quoting *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989) (per curiam)). "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom." *United States v. Morrison,* 967 F.2d 264, 268 (8th Cir.1992).

After reviewing the record in this case, I conclude that Miller has not carried his burden of demonstrating a "fair and just reason" for allowing him to withdraw his plea. Essentially, all Miller wants is a chance to renegotiate his plea agreement because he now thinks, belatedly, that he could have gotten a better deal. I also find that Miller's claims of ineffective assistance are contradicted by the record, including his own sworn statements at the Rule 11 proceeding and, therefore, no factfinding hearing is necessary.

The plea colloquy in this case was one of the longest and most thorough that this court has ever engaged in, and as the previously-quoted portions of the transcript reflect, Miller expressed absolutely no doubts, hesitation, or lack of understanding as to what he was doing or of the consequences of his guilty plea. His present assertions to the contrary are insufficient to support his Rule 32(e) motion. *See Torres,* 129 F.3d at 715 (defendant "was given every chance by the district court to raise any concerns, questions or anxieties about the plea"); *United States v. Burney,* 75 F.3d 442, 444 (8th Cir.1996) (noting that district court thoroughly explained plea agreement to defendant, and that defendant stated that he understood); *Winston,* 34 F.3d at 578 (defendant "had ample opportunity" at Rule 11 hearing to inform court that he lacked sufficient information with which to make plea decision, but instead of doing so, "he expressly asserted the contrary") (footnote omitted).

It is also noteworthy that at his first, abortive plea proceeding, Miller did inform Leonardo that he was unsure whether he wanted to plead guilty. The court made clear to Miller at that time that he was under no obligation to do so, and adjourned the matter for a week to give him time to think it over. When he returned on September 25, he unequivocally stated that he had had enough time to think about it and that he was confident that he had fully explored all his options. There is no reason to think that he would have been any more reticent about voicing any concerns on September 25 than he had been a week earlier.

I also note that Miller's criminal record shows that his three prior felony convictions all followed guilty pleas. Miller himself stated on September 25 in response to one of my questions that he had pleaded guilty before. Tr., Sept. 25, 1997, at 2. He is therefore no stranger to the criminal justice system, and certainly must have understood the nature and consequences of pleading guilty. *See Coonce,* 961 F.2d at 1276 (noting that defendant had previously pleaded guilty to criminal charges on two separate occasions, which "belie[d] the defendant's contention that he did not understand the consequences of entering a plea to a criminal charge"); *Trussel,* 961 F.2d at 690 (defendant with two prior federal felony convictions "was no babe in the woods" with respect to the criminal justice system); *United States v. Buckles,* 843 F.2d 469, 474 (11th Cir.1988) (noting that defendant had pleaded previously to a crime, and "[t]hus, he was not unfamiliar with plea proceedings"), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989).

Miller's claims that Leonardo did not undertake a sufficient investigation of the case and that Leonardo pressured Miller to accept the plea agreement are also contradicted by his prior sworn statements, and are unsupported by the record. I asked Miller if he had "fully explored all of [his] options ... with [his] lawyer," whether he had "had enough time to talk all of this over with [his] attorney," and whether he was "satisfied with [Leonardo's] help and advice," and to each of those questions Miller responded in the affirmative. When asked if anyone had forced him or threatened him to get him to plead guilty, he said no. *See Torres,* 129 F.3d at 715 (considering that defendant's "unequivocal admissions under oath contradict[ed] his unsupported assertions of pressure" by his attorney, district court did not abuse its discretion in denying his motion to withdraw plea without a hearing); *United States v. Newson,* 46 F.3d 730, 733 (8th Cir.1995) (defendant's failure to assert any objections to his counsel's performance at Rule 11 proceeding refuted any claim of ineffective assistance of counsel as basis for withdrawing plea); *Winston,* 34 F.3d at 576 (defendant's claim that his attorney failed to provide him with certain discovery material was contradicted by his unequivocal statements at Rule 11 hearing that "his attorney had done all that Mr. Winston had wanted him to do, and that he was satisfied with his attorney's performance"); *United States v. Craig,* 985 F.2d 175, 179 (4th Cir.1993) (defendant's statement under oath at Rule 11 proceeding that he was "entirely satisfied with the services of [his] attorney" "constitute[d] a formidable barrier" to Court of Appeals' finding abuse of discretion in district court's denial of motion to withdraw plea, and court found none) (quoting *United States v. DeFusco,* 949 F.2d 114, 119 (4th Cir.1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992)); *Trussel,* 961 F.2d at 690 (defendant's claim that he did not receive sufficient advice from counsel was contradicted by record of Rule 11 proceeding, where defendant "specifically stated that he was fully satisfied with his lawyers and their advice and that his lawyers had done everything he had asked of them"); *United States v. Abdullah,* 947 F.2d 306, 312 (8th Cir.1991) (rejecting claim that defendant was denied effective assistance of counsel because his attorney pressured him into pleading guilty, since at the Rule 11 proceeding, defendant "stated that he was completely satisfied with the performance of his counsel and never indicated in any manner that he was under any pressure from counsel to plead guilty"), *cert. denied,* 504 U.S. 921, 112 S.Ct. 1969, 118 L.Ed.2d 569 (1992); *United States v. Thompson,* 906 F.2d 1292, 1299 (8th Cir.) (defendant's statement at Rule 11 proceeding that he was satisfied with counsel's representation rebutted claim of ineffective assistance), *cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990).

Miller's claims of ineffective assistance amount to little more than conclusory allegations unsupported by the record. *See United States v. Jordan,* 870 F.2d 1310, 1318 (7th Cir.) (defendant "offer[ed] no evidence, only bare allegations," that former counsel failed to advise him of certain matters concerning his guilty plea), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989). In a number of instances, it is not even clear what it is he claims Leonardo did wrong, or what the significance of certain facts are. For example, he states that Leonardo did not

discuss the plea agreement with Miller very much, but it is not apparent how a more detailed discussion would have changed anything. Miller clearly said at his Rule 11 proceeding that he understood the agreement in its entirety and had no questions about it, and he has not explained what more Leonardo should have done in this regard.

As to his claim of inadequate investigation, all Miller alleges is that he does not believe that Leonardo reviewed the discovery materials turned over to him by the Government, and that Leonardo, without any independent investigation, accepted the Government's assertion that Miller was subject to the sentence enhancements of 18 U.S.C. § 841(b)(1)(A). Aside from the lack of evidence supporting these allegations, Miller has not explained how Leonardo's alleged failure to review the discovery materials had any effect on the validity of Miller's plea, nor has he identified any documents contained in those materials that would have had a bearing on the plea negotiations or Miller's decision to plead guilty. *See Winston*, 34 F.3d at 578–79 ("although [the defendant] asserts that the discovery material to which he was denied access would have altered his decision to plead guilty, he never explains why that is so").

Concerning the sentence enhancement, the apparent thrust of Miller's argument is that investigation may have revealed either that the amount of drugs involved in this case was too small to trigger the mandatory life-sentence enhancement in § 841(b)(1)(A), or that Miller did not have the requisite two prior felony drug convictions to trigger that enhancement. The mandatory life-sentence provision applies only when a defendant is convicted of a violation involving, *inter alia,* at least one kilogram of a substance containing heroin, or at least five kilograms of a substance containing cocaine, after he has been convicted of at least two felony drug offenses. A felony drug offense is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs ..." 21 U.S.C. § 802(44). Less severe enhancements apply

when the defendant has only one prior felony drug conviction, or if the present conviction involves smaller amounts of drugs.

Again, however, this assertion is nothing more than a conclusory allegation that is insufficient to demonstrate a fair and just reason for granting Miller's motion. *See Trussel,* 961 F.2d at 689 (describing allegations in defendant's motion to withdraw plea as "mere conclusions"); *Buckles,* 843 F.2d at 473 ("Mere conclusory allegations do not warrant the withdrawal of a guilty plea"). Miller has presented no evidence to suggest that he is not subject to a life sentence under § 841(b)(1)(A), and his speculation that Leonardo could legitimately have taken issue with the Government's assertion in that regard is insufficient to warrant permitting him to withdraw his plea.

As for the amount of drugs involved in this case, Miller expressly stated on the record that the plea agreement's recitation of the relevant amounts, including one kilogram or more of a mixture or substance containing heroin, *see* Plea Agreement ¶¶ 1, 6(a). Miller now states in an affidavit that he was unaware of the significance of admitting to that amount, that he "had on numerous occasions disputed the amount of controlled substances to Mr. Leonardo," and that if Leonardo "had told [Miller] to go ahead and tell the Court that [he] disputed certain factors, [he] certainly would have ..." Defendant's Sur-reply Aff. ¶ 3. Whether Miller was aware of the significance of the one kilogram amount or not, though, he clearly had every opportunity to state at the plea colloquy that he did not agree with the plea agreement in that respect, but instead he stated under oath that the agreement was factually correct. Even now he has offered no particulars in support of his vague claim of a "dispute" about this matter, and his belated assertion that he was unaware of the significance his prior admission is insufficient to overcome the "strong presumption of veracity" that is accorded to his sworn statements at the Rule 11 proceeding. *Torres,* 129 F.3d at 715.

There is also no evidence to suggest that Miller does not have at least two prior felony drug convictions. The record reflects that Miller has been convicted of *three* felony

drug offenses: two in state court and one in federal court. Even if one of these convictions were somehow invalid (and there is no evidence that any of them are), Miller would still be subject to the mandatory life-sentence enhancement of § 841(b)(1)(A).

Miller's claim of coercion likewise is contradicted by the record, especially by his own statements at the time he entered his plea, which need not be repeated again here. Moreover, " '[a]ll pleas of guilty are the result of some pressures or influences on the mind of the defendant.' A defendant cannot complain of coercion where his attorney, employing his best professional judgment, recommends that the defendant plead guilty." *Buckles*, 843 F.2d at 472 (quoting *Schnautz v. Beto*, 416 F.2d 214, 215 (5th Cir.1969)). All that Miller's allegations amount to is that Leonardo told him that this plea agreement represented the best deal he could get, and that his choices were either to sign it or go to trial and face the possibility of a life sentence with no chance of release. That was not unreasonable under the circumstances. *See Torres*, 129 F.3d at 716 (district judge correctly refused to credit defendant's claim that he pleaded guilty out of fear that his counsel was unprepared for trial, in light of defendant's statements at plea hearing that he faced no pressure or force, coupled with his complete failure to raise any concerns with the court about the quality of his counsel or counsel's preparedness for trial); *Craig*, 985 F.2d at 180 (former counsel's explanation of advice he gave to defendant respecting the wisdom of entering into plea agreement, together with defendant's statement at Rule 11 proceeding that he was "entirely satisfied" with counsel's services, credibly supported district court's rejection of defendant's assertion that counsel bullied him into pleading guilty); *Abdullah*, 947 F.2d at 312 (defendant's claim that his attorney pressured him into pleading guilty was contradicted by his statements at plea proceeding that he was satisfied with counsel's performance); *United States v. Sims*, 822 F.Supp. 1308, 1312–13 (N.D.Ill.1993) (defendant's allegation that his lawyer told him he had "no alternative but to plead guilty" was rebutted by his statements at plea hearing that he understood he had a right to go to trial; "The only threat Stevens' attorney conveyed was the risk of life imprisonment, a perilous but realistic possibility").

In addition, even assuming *arguendo* that, with the benefit of hindsight, Leonardo arguably should have looked further into the nature of Miller's prior offenses, or done anything differently with regard to the plea agreement, the facts here do not support a finding that his conduct was objectively so unreasonable as to amount to ineffective assistance for purposes of the Sixth Amendment. Considering the very real possibility that Miller might end up incarcerated for the rest of his life if found guilty at trial, Leonardo's negotiation of a sentence possibly as low as fifteen years was well within the boundaries of reasonably effective performance. *See Trussel*, 961 F.2d at 690 (even though defendant received 222–month sentence, "his guilty plea was not a bad deal for him" considering that he was facing possible mandatory 30–year sentence); *see also Torres*, 129 F.3d at 716 (analyzing defendant's claim that he was denied effective assistance of counsel in connection with guilty plea under standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *Craig*, 985 F.2d at 179 (same); *Abdullah*, 947 F.2d at 312 (same); *Trussel*, 961 F.2d at 690 (same); *United States v. Zweber*, 913 F.2d 705, 711–12 (9th Cir.1990) (same).

Moreover, since Miller even now does not want to go to trial, but only to work out a new plea agreement or plead to the indictment and take his chances at sentencing, I find no prejudice here. Miller's allegation that Leonardo could have obtained a better deal is sheer speculation, and even if he had only *one* prior felony drug conviction, § 841(b)(1)(A) would still require a sentence of no less than twenty years. I am not convinced, therefore, that Miller would not have pleaded guilty pursuant to this agreement had Leonardo acted differently. *See Torres*, 129 F.3d at 716 (even if counsel's performance were unreasonably deficient, defendant offered no evidence that, but for counsel's deficiency, result would have been different); *Craig*, 985 F.2d at 180 (record belied any conclusion that but for attorney's

misleading advice, defendant would not have pleaded guilty); *Jordan*, 870 F.2d at 1319 (defendant's claim of ineffectiveness failed to show that defendant would not have pleaded guilty but for counsel's alleged incompetence); *Sims*, 822 F.Supp. at 1314 (defendant showed no prejudice from alleged incompetence of his former attorney, because he did not demonstrate how the granting of any motions he claimed his attorney should have filed would have caused him not to plead guilty).

The timing of Miller's motion to withdraw his plea is also significant. "Because the timing of a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just. . . . [E]xcessive delay saps strength from any proffered reason for withdrawal." *Doyle*, 981 F.2d at 595. *See also Buckles*, 843 F.2d at 473 ("The longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal"). Miller waited nearly three months after pleading guilty before he filed his motion, and the fact that he filed it sixteen days before his self-surrender date suggests that he was simply getting cold feet over the prospect of commencing an incarceration that would last for at least the next fifteen years. *See Craig*, 985 F.2d at 177 (eight-week interval between guilty plea and motion to withdraw plea "clearly militate[d] against withdrawal"); *Doyle*, 981 F.2d at 595 ("One would have to believe in the Tooth Fairy to think it merely coincidental" that defendant suddenly realized that plea agreement was invalid on the heels of district court's divulging that it was contemplating lengthy sentence); *Sims*, 822 F.Supp. at 1316 (interval of two and one-half months between guilty plea and filing of motion to withdraw plea, which was filed shortly after codefendant's acquittal, made motion look like an "after the fact fiction . . ."); *United States v. Joseph*, 742 F.Supp. 618, 621–22 (M.D.Fla.1990) ("The timing of [defendant's] motion to withdraw plea strongly suggests that petitioner's desire to withdraw is not motivated by any misunderstanding as to the nature and consequences of his plea or any improper influence by counsel but rather due to a change of heart after defendant saw the Pre–Sentence Report").

Moreover, Miller does not assert his innocence (which would be difficult credibly to do, given his clear admissions of guilt at the Rule 11 proceeding), and he does not even want to go to trial. He wants to withdraw his guilty plea and then plead guilty a second time, either pursuant to a new, more favorable plea agreement, or without a plea agreement in the hopes that he can persuade the court to give him a more lenient sentence than that contemplated by the current plea agreement. At oral argument on Miller's motion, in response to one of my questions, Miller's attorney stated that Miller "is not asserting his innocence, Judge." Transcript ("Tr."), Mar. 25, 1998, at 28. When I asked if Miller wanted to withdraw his guilty plea and go to trial, his attorney stated that he did not. Tr. at 35, 43. Instead, he stated that Miller simply wanted to plead guilty to the indictment without a plea agreement, and deal with any disputed factual matters at sentencing. Tr. at 10, 20, 35–36, 49.[2]

As stated, whether the movant credibly asserts his innocence is a factor that may be considered in determining whether a fair and just reason exists for granting a motion under Rule 32(e). *Craig*, 985 F.2d at 178 (noting that defendant "has never asserted, credibly or not, his innocence . . ."); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.) (noting that defendant "does not even deny guilt"), *cert. denied*, 513 U.S. 864, 115 S.Ct. 180, 130 L.Ed.2d 115 (1994); *Doyle*, 981 F.2d at 596 ("the absence of a claim of innocence weighs in favor of allowing a guilty

2. Miller's Rule 32(e) motion itself states that he wants to be allowed to withdraw his plea "with the hope that a plea agreement fairly addressing all aspects of the sentencing guidelines could be reached between [Miller] and the government." Def. Motion Ex. A ¶ 21. At oral argument, however, his attorney disavowed any desire to renegotiate the plea agreement, but stated instead that Miller was willing simply to plead guilty to the indictment without an agreement. Tr. at 49. In any event, though, Miller has never stated that he wants to withdraw his plea so that he can go to trial.

plea to stand"); *United States v. Artabane,* 868 F.Supp. 76, 78 (M.D.Pa.1994) ("[w]hether the movant has asserted his legal innocence is an important factor to be weighed"). No matter how he attempts to characterize his request, the fact remains that Miller is not asserting his innocence or seeking to put the Government to its proof at trial, but only to attempt to obtain a more favorable sentence. As do the other circumstances in this case, that fact weighs against allowing him to withdraw his plea.

### CONCLUSION

Defendant Leonard George Miller's motion for leave to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(e) (Item 147) is denied.

The Probation Office is ordered to begin preparation of Miller's presentence investigation.

Sentencing is scheduled for July 17, 1998, at 9:00 a.m.

Defendant is ordered to appear on May 13, 1998 at 2:30 p.m. for a hearing concerning release pending sentencing.

IT IS SO ORDERED.