**UNITED STATES of America,
Plaintiff,**

v.

**Leon DUKAGJINI (a/k/a "Duke"),
Defendant.**

**No. 96–CR–6065L.
No. 99–CV–6571L.**

United States District Court,
W.D. New York.

Feb. 14, 2002.

Christopher Paul Tuite, U.S. Atty. Office, Rochester, NY, for U.S.

### DECISION AND ORDER

LARIMER, Chief Judge.

Pending before the Court is defendant Leon Dukagjini's ("Dukagjini") motion to vacate or to withdraw his guilty plea. The motion is denied.

Dukagjini was arrested by members of the Drug Enforcement Administration ("DEA") in September 1996. On January 9, 1997, a 36–count superceding indictment was filed against Dukagjini and fifteen co-defendants for conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin and five hundred grams or more of cocaine and related offenses. Dukagjini was named in six counts. He was charged with the conspiracy, in violation of 21 U.S.C. § 846, as well as one count of distribution of heroin on a specific date, September 25, 1996. He was also charged with two counts of using a communication device to facilitate a drug distribution crime in violation of 21 U.S.C. § 843(b). Two forfeiture counts were also contained in the superceding indictment.

From January 1997 to November 26, 1997, when Dukagjini pleaded guilty (plea date), there were extensive pre-trial proceedings, including a lengthy suppression hearing relating to certain statements made by Dukagjini when he was arrested. Dukagjini was represented at that time by court appointed counsel, Scott M. Green, Esq.

During this time, there was also extensive discussion between Green and the prosecutors concerning disposition of Dukagjini's case by a plea agreement. On November 26, 1997, Dukagjini entered into a 18–page written plea agreement (Dkt.# 145), and pleaded guilty to the conspiracy count (Count 1). Dukagjini further agreed to the forfeiture of certain assets listed in Counts 32 and 33.

The plea agreement, which will be discussed in more detail, *infra,* contained several notable provisions. First, it advised Dukagjini that because of his prior drug felony conviction, he faced an enhanced punishment of 20 years to life imprisonment. There was also a recitation of his sentencing guideline range which was 108–135 months based on a Criminal History Category of III. There was also a lengthy factual statement concerning Dukagjini's criminal activities in the conspiracy, and an agreement by Dukagjini not to appeal or collaterally attack any sentence of 20 years, or less. Furthermore, there was an extensive statement concerning Dukagjini's agreement to cooperate with the Government. Plea Agreement, ¶¶ 19–27. If Dukagjini provided the required substantial assistance, the Government agreed to file a departure motion under 18 U.S.C. § 3553(e) and under 5K1.1 of the Sentencing Guidelines. Such a motion would, of course, permit the Court to sentence Dukagjini *below* the otherwise mandatory 20 year term of imprisonment.

Dukagjini also agreed to forfeit his interest in $71,000 seized from his home on September 25, 1996, pursuant to a search warrant as well as his interest in an automobile registered in his wife's name, on the grounds that the property was the proceeds of drug activity or was used to facilitate unlawful drug activity. Plea Agreement, ¶ 29.

Subsequent to entry of the guilty plea, Dukagjini continued his cooperation with the Government. Of course, Dukagjini had cooperated with the Government from the moment of his arrest. When he was arrested, Dukagjini gave a detailed statement implicating himself, Leonard Miller, and his source, Halit Shehu, in the heroin business. He also consented to a search of his home where 831 grams of heroin and $71,000 were found in a false closet in his basement. Based in part on Dukagjini's cooperation before the plea agreement, his source, Shehu, was indicted in the superceding indictment. After the plea, the Court adjourned sentencing without date to allow Dukagjini to complete his cooperation.

It was not until November 17, 1999—two years after entry of the guilty plea—at Dukagjini first raised issues about his guilty plea. On that date, November 17, 1999, Dukagjini, *pro se*, filed what he styled as a "2255 Motion to Vacate Sentence – Ineffective Assistance of Counsel." (Dkt.# 288).

By letter dated February 2, 2000 (Dkt.# 290), Dukagjini clarified the earlier motion. It was clear that he requested that attorney Green be removed as counsel, and he requested leave to withdraw his guilty plea and "reopen" the suppression hearing.

The Court held a hearing on Dukagjini's two motions on February 10, 2000. The Court removed Green as counsel and agreed to appoint a new attorney for Dukagjini. Another attorney was appointed but soon after the appointment he requested leave to withdraw and, therefore, on March 20, 2000, the Court appointed Dukagjini's present attorney, James P. Harrington, Esq. New counsel was given additional time to meet with Dukagjini, review all of the prior proceedings, and review the case with the prosecutors. The Court deferred ruling on Dukagjini's motion to withdraw the plea to allow new counsel time to consult with Dukagjini and determine if such an application was truly in his best interest. A decision had to be made as to whether Dukagjini wished to move to vacate the plea or to proceed to sentencing and seek leniency based on Dukagjini's cooperation. Dukagjini's new attorney met with him and the Government several times in an effort to resolve the matter, but without success. In addition, defense counsel requested several extensions within which to file a new motion relating to the guilty plea. Eventually, defendant's motion was filed on September 6, 2001, and the Court heard extensive argument on October 4, 2001.

## DISCUSSION

The standards governing motions to withdraw guilty pleas were set out by this Court in a prior decision relating to a co-defendant of Dukagjini, Leonard Miller, in a decision entered in this case on April 30, 1998. (3 F.Supp.2d 376). I repeat those standards here.

Rule 32(e) of the Federal Rules of Criminal Procedure provides that the court may grant a motion for leave to withdraw a guilty plea, prior to sentencing, upon a showing of a "fair and just reason" for doing so. Nonetheless, "it is basic that '[a] defendant has no absolute right to withdraw his guilty plea.'" *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) (quoting *United States v. Williams*, 23 F.3d 629, 634 (2d Cir.)), *cert. denied*, 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994). "The defendant bears the burden of showing that there are valid grounds for relief." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997).

In determining whether a "fair and just reason" exists to grant a motion to withdraw a guilty plea, the court may consider various factors, including: the amount of time that has elapsed between the plea and the motion; whether the defendant is asserting his innocence; the likely voluntariness of the plea; and any prejudice to the Government. *Torres*, 129 F.3d at 715; *United States v. Doyle*, 981 F.2d 591, 594 (1st Cir.1992). "One especially important consideration is the defendant's answers to the questions posed at his Rule 11 hearing," *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir.1992), which "carry a strong presumption of veracity . . ." *Torres*, 129 F.3d at 715 (citing *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). Because "answers

contained in [the plea proceeding] are binding," a court "cannot allow [a defendant] to disavow the answers he gave as easily as he wishes." *United States v. Winston,* 34 F.3d 574, 578 (7th Cir.1994). Therefore, a "defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Id.*

In addition, while an evidentiary hearing may be appropriate where a defendant has demonstrated factual issues surrounding the voluntariness or general validity of his plea, no hearing is required "if the movant's allegations 'merely contradict[ ][his] earlier statements made under oath at his plea allocution.'" *Maher,* 108 F.3d at 1529 (quoting *United States v. Gonzalez,* 970 F.2d 1095, 1101 (2d Cir.1992)) (brackets in original); *accord Torres,* 129 F.3d at 715.

It is plain, then, that a "defendant who presents a reason for withdrawing his plea that contradicts the answers he gave at a Rule 11 hearing faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is 'fair and just.'" *Trussel,* 961 F.2d at 689. Rule 11 "provides a thorough hearing [at the time of the plea] to determine the voluntariness and intelligence of guilty pleas, and ... defendants afforded such a hearing should not be easily let off the hook when they feel like changing their minds." *United States v. Coonce,* 961 F.2d 1268, 1276 (7th Cir.1992).

The reason for this is simple: " '[s]ociety has a strong interest in the finality of guilty pleas,' and allowing withdrawal of pleas not only 'undermines confidence in the integrity of our judicial procedures,' but also 'increases the volume of judicial work, and delays and impairs the orderly administration of justice.'" *Maher,*

108 F.3d at 1529 (quoting *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989) (per curiam)). "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom." *United States v. Morrison,* 967 F.2d 264, 268 (8th Cir.1992).

*United States v. Miller,* 3 F.Supp.2d at 379–380.

After reviewing the record in this case, I conclude that Dukagjini has not carried his burden of demonstrating a "fair and just reason" for allowing him to withdraw his plea. Essentially, all Dukagjini wants is a chance to renegotiate his plea agreement because he now thinks, belatedly, that he could have gotten a better deal. I also find that Dukagjini's claims of ineffective assistance are contradicted by the record, including his own sworn statements at the Rule 11 proceeding and, therefore, no fact-finding hearing is necessary.

 Dukagjini has failed to meet the test for withdrawal of the guilty plea. First of all, the two-year delay between the plea date, November 26, 1997, and Dukagjini's first motion seeking to vacate, November 17, 1999, is so extraordinary as to warrant denial of the motion on that basis alone. Courts consistently consider the amount of time which has elapsed between the plea and the motion to vacate. Prompt requests are more often favorably considered, but the longer it takes a defendant to seek withdrawal, the less likely his reasons will justify permitting withdrawal of the plea. The Government lists numerous cases in its response to defendant's motion (Dkt.# 378) at p. 12, which upheld denial of a motion to vacate involving far less delay than occurred here. *See e.g., United States v. Isom,* 85 F.3d 831, 839 (1st Cir.1996) (2 months too long); *United States v. Cotal–Crespo,* 47 F.3d 1, 8 (1st Cir.) (same), *cert. denied,* 516 U.S. 827, 116

S.Ct. 94, 133 L.Ed.2d 49 (1995); *United States v. Spencer,* 836 F.2d 236, 237 (6th Cir.1987) (5 weeks not prompt enough to warrant withdrawal); *United States v. Keefe,* 621 F.2d 17, 18 (1st Cir.1980) (3 weeks); *United States v. Ramos,* 810 F.2d 308, 313 (1st Cir.1987) (13 days too long).

It is hard to conceive of a justifiable reason for Dukagjini's delay of two years in asserting the claims now raised concerning his state of mind at the time of the plea and concerning the actions of his former attorney. Dukagjini makes no attempt whatsoever in his present papers to explain this extraordinary delay. Nowhere in Dukagjini's forty-eight paragraph affidavit does he even discuss delay or the timing of his motion. None of the material discussed by Dukagjini constitutes new evidence. All of his present complaints certainly could have .been raised within days of the plea if they really had been of concern to Dukagjini.

During this two-year period, sentencing was delayed so that Dukagjini could complete his cooperation by testifying against others. As it turned out, all the co-defendants, except for three, eventually pleaded guilty. One who did plead guilty, Keith Miller, was a major player in the conspiracy, and he pleaded in May 1998, and was sentenced to two hundred months imprisonment. Two of the co-defendants, Samuel Griffin and Alvin McGee, went to trial and were convicted before a jury in March 1999. Dukagjini did not testify at that trial, but it seems apparent he had virtually no conduct with these men who were distributors for the Miller brothers, who were Dukagjini's principal contacts. The other co-defendant, Shehu, who had been directly implicated by Dukagjini, fled and remains a fugitive.

It does not appear to be disputed that Dukagjini stood ready to cooperate against others in the conspiracy pursuant to his plea agreement. The Government attached a letter to its response (Dkt.# 378) as Exhibit "1," from Dukagjini to the prosecutor, Christopher P. Tuite, AUSA, which is dated January 2, 1999, about fourteen months after Dukagjini's plea date. In that letter, Dukagjini writes as a "friendly reminder" that he remains willing to testify against the co-defendant Miller, as well as in the trial of co-defendant Griffin. Of course, there is no mention in that letter of any change of heart or dissatisfaction with the plea agreement entered many months before.

██ Even if Dukagjini had raised claims concerning the voluntariness of the plea in a timely manner, these claims are belied by the sworn statements Dukagjini made during the plea colloquy itself. As noted above, a "defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Winston,* 34 F.3d at 578.

At the start of the plea colloquy, Dukagjini was advised that he had to answer all of the Court's questions "truthfully;" and if he made a false statement it could constitute perjury and that his statements would be taken under oath. (Tr., p. 3).[1]

Prior to discussing the specific items of the plea agreement, the prosecutor represented that the agreement had been "circulating between the parties literally for many months ..." (Tr., p. 6). Defendant acknowledged that as did his attorney who stated that the agreement was the same agreement that we had seen for "a long time now." (Tr., p. 7). In answer to the Court's question, Dukagjini stated that he understood the agreement, that he had

---

1. "Tr." signifies the transcript of the plea colloquy on November 26, 1997.

enough time to consider all of his options, and that no one had forced him or threatened him to sign the agreement. (Tr., p. 8).

The plea agreement itself consisted of eighteen paragraphs and the prosecutor summarized the salient points of the agreement at length on the record during the plea colloquy. (Tr., pp. 9–17).

The prosecutor also discussed defendant's cooperation. He indicated that the agreement "does involve and has involved cooperation." (Tr., p. 13). The prosecutor acknowledged that in exchange for defendant's cooperation, the Government would make a motion at sentencing, pursuant to § 3553(e) and § 5K1.1 of the Guidelines, recommending departure downward from the Guidelines and the designated statutory minimum sentence. (Tr., p. 14).

At the end of that lengthy recitation, Dukagjini stated that he understood the agreement. He did raise issues related to forfeiture matters. After the forfeiture matter was discussed and explained, Dukagjini stated that he agreed to the forfeiture of the $71,000 and conceded that that money was the proceeds of drug trafficking. (Tr., p. 20). Defendant also acknowledged that the Honda automobile was also used to facilitate drug trafficking and would be forfeited even though it was registered in Dukagjini's wife's name. Dukagjini's lawyer represented that his wife's attorney did not intend to contest the forfeiture either. (Tr., p. 20). In sum, Dukagjini agreed to forfeit whatever interest he had in the money, automobile and his residence. (Tr., p. 23). Although the prosecutor had already discussed the terms of the cooperation agreement, the Court itself discussed that matter at length with Dukagjini. (Tr., pp. 22–24) and Dukagjini acknowledged his understanding of the cooperation formula and stated that he understood ultimately that it was up to the Court as to the amount of departure. (Tr., pp. 24–25).

The Court asked Dukagjini on several occasions whether he had any questions or concerns of the Court or his lawyer, and Dukagjini advised that he had no questions. (Tr., pp. 25–26), except for the forfeiture matters. The fact that Dukagjini discussed his concerns about forfeiture and expressed concerns about his interest and his wife's interest in the property, demonstrates that he was not shy about discussing matters that concerned him about the plea agreement. Dukagjini has appeared before this Court on several occasions, and he has never been bashful or reluctant to address the Court concerning matters of concern.

It was also clear from the agreement that Dukagjini had a prior conviction and was therefore not a newcomer to the criminal justice system. When the Court inquired, Dukagjini admitted that he had gone to trial on a prior matter, and that he understood that he had a right to a trial in this case, with all the attendant rights involved in a criminal trial. (Tr., pp. 26–30).

Dukagjini was then asked to read to himself the two pages in the plea agreement (pp. 3–4) which set forth the factual basis of the plea. Dukagjini admitted and acknowledged that everything in that statement was true and accurate and that he engaged in the conduct set forth in the factual paragraphs of the agreement. (Tr., p. 31).

After all this discussion, the Court quizzed Dukagjini once again:

**The Court:** Mr. Dukagjini, even now, after we have chatted here for 45-minutes or so, do you have any questions about anything?

**The Defendant:** No, sir.

(Tr., p. 32).

It is also important to note that when the Court specifically asked Dukagjini if he was satisfied with the help of his attorney, Dukagjini replied that he was satisfied. (Tr., p. 30). Although Dukagjini discussed certain concerns he had with the plea agreement relative to forfeiture, he never mentioned a word concerning his attorney or any dissatisfaction with his attorney or the plea bargain worked out by him.

The Court distinctly recalls the plea colloquy. There was no hesitation on the part of Mr. Dukagjini or suggestion that his plea was anything other than knowing and voluntary. The transcript of the plea proceedings certainly reflects that. I see no reason now, many years after the plea proceeding, to credit Dukagjini's conclusory statements that his guilty plea was not knowing and voluntary.

Dukagjini also makes no claim of innocence concerning the underlying drug charges, nor does he suggest any applicable defense. This failure to assert innocence is another factor that militates against withdrawal of the plea. Whether a defendant credibly asserts his innocence is a factor that may be considered in determining whether a fair and just reason exists for granting a motion under Rule 32(e). *See Miller,* 3 F.Supp.2d at 384 (collecting cases).

It is clear from the papers filed by Dukagjini that his primary concern relates not to his innocence but to his belief that he should have received a better "deal" for cooperating with the Government. Dukagjini makes no claim of innocence. In fact, to the contrary, he states in his affidavit in support of the motion, at ¶ 13, the following: "On the morning of September 26, 1996, I was arrested in Rochester, New York after I delivered four and one-half ounces of cocaine to Leonard Miller." This lack of claimed innocence is another factor that warrants denial of the motion. Dukagjini has suggested that his prior attorney was forceful in urging him to accept the Government's offer and plead guilty but with a detailed cooperation agreement. In reality, it appears that Dukagjini had few other options. As soon as he was arrested, he cooperated with authorities and confessed to the drug conspiracy charges. He admitted knowing one of the principal co-conspirators, Leonard Miller, and acknowledged that he met him while in prison for a prior drug conviction. His cooperation lead to seizures of substantial sums of money and drugs at his own residence within hours of his arrest. Furthermore, he supplied investigators with names of other co-conspirators, including his source of supply, Shehu. In addition, he was caught "red handed" on the day of his arrest as he attempted to distribute approximately four and one-half ounces of heroin to Leonard Miller at Miller's home in Rochester. In addition, the DEA had utilized extensive wiretaps on both Leonard Miller's home and his brother's which also connected Dukagjini to the narcotics activity. Leonard Miller had already agreed to cooperate and had worked with Government agents to set up Dukagjini as he delivered heroin to Miller.

In light of Dukagjini's apprehension at the scene of a drug transaction, the willingness of his co-conspirators to testify against him and his prompt confession and immediate cooperation with the DEA, it is hard to imagine why defense counsel would have pursued any other course but to attempt to work out the best deal possible. Dukagjini also had a prior drug conviction in federal court for which he was sentenced to eight years imprisonment with a special eight year special parole term. This offense occurred while Du-

kagjini was on that parole term. Because of that prior record, which Dukagjini acknowledged in the plea agreement and has never contested here, he faced a mandatory minimum twenty-year term of imprisonment. Of course, the only way to avoid that mandatory sentence was to do precisely what Dukagjini agreed to do and that was to plead guilty, get the benefit for acceptance of responsibility and be afforded the opportunity for a downward departure from the statutory minimum sentence based on the cooperation that had already occurred and was expected to occur in the future. In light of this overwhelming evidence, it would have been folly for defense counsel to do anything but "strongly" urge Dukagjini to face reality, take the plea and work for the most favorable sentence.

The correspondence between Dukagjini and attorney Green which has been submitted on this motion by Dukagjini demonstrates several things. First of all, it demonstrates that Dukagjini and Green were discussing a plea and the best possible deal for many months prior to the actual plea date of November 26, 1997. The items discussed in this correspondence commencing in September 1997 discusses the very terms that were agreed to months later when Dukagjini pleaded. The correspondence also shows that attorney Green carefully advised Dukagjini of the strength of the Government's case, the nature of the offer available from the Government and Green's recommendation. A clear example of this is Green's letter to Dukagjini dated September 8, 1997. (Exhibit "D" to Affidavit of Leon Dukagjini (Docket # 373)). In that letter, Green advised Dukagjini of the Government's requirements and stated that Dukagjini's belief that he could "win" the suppression hearing was "unreasonable" and "dangerous" to Dukagjini's "desire to enter into a plea agreement ... for the least amount of time possible." The Government apparently

was requesting a twelve year term but Green advised that Dukagjini's best option was to leave the sentence up to the Court and seek, via the departure motion, a sentence below the Government's request. (*Id.*).

Dukagjini's letter in response is instructive as well. Dukagjini kept repeating that he had seen better deals. He claimed to have seen plea agreements "of other inmates." (Exhibit "E" to Affidavit of Leon Dukagjini). It is clear that Dukagjini was pressing Green not to go to trial but to get the best deal possible. Dukagjini concludes that letter by saying he "like[d]" the plea agreement formula which gave him an opportunity to get the sentence he was hoping for, seven years. Later, on October 1, 1997, Green wrote to Dukagjini and enclosed a draft of the plea agreement, some seven weeks before the actual plea was entered on November 26, 1997. (Exhibit "F" to Affidavit of Leon Dukagjini).

In sum, none of the reasons now belatedly raised by Dukagjini have merit and none warrant withdrawal of the guilty plea. This entire exercise appears to be nothing more than a request by a defendant who has a change of heart, years after the plea was entered, in hopes of obtaining what he sought to obtain initially—a better deal. This has never been a legitimate reason for withdrawal of a guilty plea pursuant to Rule 32(e). The application here comes after Dukagjini had received the final presentence report and as he was about to face sentencing. There is no just reason to allow Dukagjini to withdraw this plea.

At this late date, the prejudice to the Government is not insubstantial. Years have elapsed since the drug activity charged in the indictment occurred in 1995–1996. All of the other co-defendants

have either pleaded guilty or have been convicted after trial. Cooperating witnesses against Dukagjini have been sentenced years ago and received the benefit of whatever leniency was extended. It is not at all clear at this late date whether any of these witnesses would be able and willing to testify for the Government. The Government should not be compelled to start all over again with Dukagjini just because he now has a change of heart over a beneficial agreement that was negotiated for many months by his former lawyer.

## CONCLUSION

Defendant's motion to vacate the guilty plea of November 26, 1997 (Dkt.# 373), is in all respects denied.

Defendant's *pro se* motion to vacate sentence in 99–CV–6571L (Dkt.# 288) is dismissed.[2]

Defendant's *pro se* motion for return of property (Dkt.# 346) is denied.

Sentencing is scheduled for March 13, 2002 at 10:00 a.m. Any objections to the presentence report must be filed by March 4, 2002. Any other sentencing memorandum must be filed four business days prior to sentencing.

IT IS SO ORDERED.

---

**2.** To the extent Dukagjini sought to have new counsel appointed, that motion was granted in part when I agreed to substitute new counsel for attorney Green on or about February 10, 2000. New counsel, attorney Harrington, advised the Court on the record that his written motion of September 6, 2001 (Dkt.# 373), replaced defendant's *pro se* motion.