**UNITED STATES of America,
Plaintiff,**

**v.**

**Thomas AQUINO, Defendant.**

**No. 99–CR–6010L.**

United States District Court,
W.D. New York.

Feb. 20, 2002.

Lawrence L. Kasperek, Rochester, NY, Robert G. Smith, Federal Public Defender, Rochester, NY, Barry D. Leiwant, The Legal Aid Society, Federal Defender Division-Appeals Bureau, New York, NY, for Defendant.

Douglas E. Gregory, U.S. Attorney's Office, Rochester, NY, for U.S.

## DECISION AND ORDER

LARIMER, Chief Judge.

Defendant, Thomas Aquino ("Aquino"), was convicted after a jury trial for possession of a firearm by a convicted felon and possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), and for possession of a stolen firearm, in violation of § 922(g) and 924(a)(2). On appeal to the United States Court of Appeals for the Second Circuit, the conviction for possession of ammunition was vacated and dismissed and the matter was remanded for resentencing. The Second Circuit also remanded for this Court to consider the ineffective assistance of counsel claims raised by Aquino in his direct appeal.

On remand, the Court relieved former counsel, Robert G. Smith, Esq. ("Smith"), Assistant Federal Public Defender, and appointed new counsel, Lawrence J. Kasperek, Esq. Defendant then moved for a new trial on the grounds of ineffective assistance of counsel (Dkt.# 55). The Government responded to the motion and the Court heard oral argument. The Court also conducted an evidentiary hearing on the motion on November 5, 2001. At that hearing, Aquino's former lawyer, Smith, testified as did two other lawyers from the Federal Public Defender's Office who worked with Smith on the case, in addition to an investigator and paralegal from that office. Aquino did not testify at the hearing.

Aquino moves for a new trial on the grounds that his trial counsel was ineffective. In the original moving papers (Dkt.# 55), several errors of counsel were alleged. In a filing subsequent to the evidentiary hearing, though, defendant's present focus is much narrower. It appears that Aquino's principal challenge is that his trial counsel failed to contact an independent fingerprint expert prior to trial and did little to challenge the Government's expert's testimony that Aquino's fingerprints were found on the firearm in question.

After a review of all of the materials submitted on the motion and after consid-

ering the testimony adduced at the hearing on the motion, as well as all the trial proceedings, I find no basis for granting a new trial based on ineffective assistance of trial counsel.

██ A claim of ineffective assistance must be analyzed according to the standards set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court stated in *Strickland* that the test for an ineffective-assistance claim is whether the defendant received "reasonably competent assistance." *Id.* at 688, 104 S.Ct. 2052. In deciding this question, the court must apply an objective standard of reasonableness. *Id.*

██ Generally, defense counsel is "strongly presumed to have rendered adequate assistance..." *Id.* at 690, 104 S.Ct. 2052. To succeed on such a claim, then, the defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

██ If defense counsel's performance is found to have been defective, relief may only be granted where it is shown that the defense was actually prejudiced by counsel's errors. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. Prejudice is established upon a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. The court determines the presence or absence of prejudice by considering the totality of the trial evidence. *Id.* at 695, 104 S.Ct. 2052.

1. "T." signifies the trial transcript.

At trial, the principal issue was whether Aquino knowingly possessed the firearm. The firearm was not found on Aquino's person by the police when they arrived at 88 Radio Street that winter evening, January 6, 1999. The police found the firearm on the window ledge of a detached garage at the premises. When the police first arrived at the scene, Aquino was outside the premises in the driveway. (T., p. 175).[1] Several officers went into the residence to talk to the occupants and Aquino remained outside. When that happened, Officer Ignacio Torres observed Aquino walk down the driveway into the backyard with his dog. Aquino was out of sight for about a minute. (T., p. 212–213). Officer David Anne also observed Aquino walk to the rear of the building and disappear from view. (T., p. 314–315). Anne testified that a few minutes later he went into the backyard area and observed human and dog footprints leading across the backyard to the rear of the garage. (T., p. 320–324). With a flashlight, he followed the footprints across the yard and they led directly to the window ledge where he found the firearm. (T., 325). Anne testified that the path of footprints then returned back toward the driveway in the front of the house. (T., p. 324).

·Once the gun was recovered, Aquino was arrested. He provided no explanation concerning the gun but became belligerent and threatened to sue the officers for false arrest. (T., p. 183).

The Government called a fingerprint expert, Rochester Police Officer Thomas W. Walton who testified that he had been making fingerprint comparisons for over sixteen years. He explained that this work involved tens-of-thousands of comparisons (T., p. 271), and he explained the process of fingerprint analysis. In summary, he testified that Aquino's finger-

prints were found on the firearm that was found on the ledge.

There was other circumstantial evidence connecting Aquino to the firearm. The owner of the firearm testified at trial that the weapon had been stolen, together with several other items, from his home in Batavia, New York in a burglary. He noticed the several missing items and promptly reported the burglary to the police on December 17, 1998. (T., p. 282–283). The owner also testified that Aquino and his parents lived next door to him for about twenty years. (T., p. 287). When the police officers first confronted Aquino a few weeks later, on January 6, at Radio Street, Aquino told them that he was from Batavia. (T., p. 178), and when he testified at trial, he admitted that his permanent residence was in Batavia (T., p. 375).

Aquino himself testified at trial and admitted touching the firearm. The story he told at trial was that during the officers' visit to 88 Radio Street, he had followed his young dog into the backyard and he observed the dog approach an item which he believed to be dog feces. Aquino claimed that he ran up to push the dog away and discovered, to his surprise, that the item was a firearm. He picked it up and placed it on the window ledge and left the area. (T., p. 367–368). He returned to the front of the house but did not tell the officers about finding the firearm. (T., p. 369, 380).

█ The defense theory was that this momentary touching of the firearm by Aquino was not knowing possession. The defense requested and received from the Court an instruction concerning "fleeting" possession. The jury was instructed that if it accepted Aquino's testimony that he merely picked up the firearm under the circumstances as he described it, that would not constitute knowing possession. (T., p. 458–59). That strategy, that is, that

Aquino's touching was momentary and constituted nothing more than fleeting possession was pursued by the defense throughout the trial. In fact, in his opening statement, defense counsel did not dispute the fact that Aquino's prints were found on the firearm because that fact was not inconsistent with the defense theory of the case.

Even without the benefit of the evidence gleaned from the hearing on this motion relating to ineffective assistance of counsel, I believed at trial, and I believe now, that the strategy employed by the defense, in light of the defendant's testimony, was certainly reasonable and fell well within the objective standards of reasonableness as required by *Strickland*. After considering the evidence adduced at the hearing, I am even more convinced that defense counsel's trial tactics were entirely reasonable and proper.

At the hearing on the motion, defendant's former counsel testified at some length about his conversations with the defendant and his trial strategy. Smith testified that he obtained the preliminary hearing record prepared in state court where Aquino's case had originally been prosecuted. Aquino's defense counsel there advised Smith of the version presented to him by Aquino. At that time, Aquino advised his state court attorney that he had followed his dog into the backyard, and as he felt his way along the back of the garage, he touched something on the ledge which later turned out to be a firearm. He picked up the weapon for a moment and then put it back on the ledge.

Smith testified that when he met Aquino, however, he received a different version. In fact, he claimed that Aquino eventually told him three separate versions of what happened in the backyard of 88 Radio Street. The second version was

that Aquino had followed his dog into the backyard and saw some metal on the ground. Fearing that the dog would roll on it and injure himself, Aquino picked it up and discovered that it was a firearm. Later, when Smith visited Aquino in jail, Aquino told him a different story. Then, he advised that he was a heroin addict, that he was given the gun by a person selling drugs from 88 Radio Street so that he could "guard" the premises. When the police appeared on the scene, Aquino went into the backyard and disposed of the gun on the ledge. About a week later when Smith returned to the jail, Aquino told Smith that his earlier statement that he had received the gun from a drug dealer was false and that he was just "testing" Smith.

Smith testified that another, fourth version was presented to him by Aquino shortly before trial. Aquino's version had changed again. Now the story focused on the dog feces event as Aquino later described it for the jury. Smith testified that Aquino was adamant on testifying and insisted that he take the stand and relate this version to the jury.

Smith made a conscious decision to follow a defense strategy of presenting a "fleeting possession" defense, that is, that Aquino touched the gun but did not have the requisite custody and control over it to constitute knowing possession. Smith discussed this strategy with William Clauss, the Federal Public Defender, as well as another attorney in the office, Marianne Mariano, who tried the case to the jury with Smith. Clauss, who had been with the Federal Public Defender's Office since 1992 and was Chief Defender since 1996, testified that he did discuss trial strategy with Smith and that the strategy seemed to be a reasonable one.

Smith recalled discussing fingerprint evidence in general but it was not his intent to defend the case based on the fingerprint evidence since his client never denied touching the weapon. Clauss testified that although he had consulted experts in his own cases concerning fingerprints, it was usually done in cases where the client advised that he could not have touched the disputed item. Clauss testified that in his experience defense counsel need not retain an expert just because the prosecutor had one. Cross-examination may be sufficient depending on the nature of the defense. Finally, Clauss concluded that if the client admitted touching the gun, it would be less likely that Clauss would call a fingerprint expert.

Smith was questioned by Aquino's present attorney as to why he did not prepare and present an alternative defense that Aquino had not touched the gun and that the prints found there were not his. Smith testified that in his view such a strategy was ill-advised and that juries tended to discredit such a tactic. He testified that he had been a criminal defense lawyer for over sixteen years both in the local Monroe County Public Defender's Office as well as in the Federal Public Defender's Office, and that he had tried approximately one hundred cases ranging from the most serious, murder, to less serious offenses. He testified that he had never presented an alternative defense theory in his years of practice.

The testimony of Aquino's former lawyers, Smith, Mariano and Clauss, stands uncontradicted. Aquino did not testify at the hearing on the motion and he called no other witnesses. His attorneys' version of the events stands unrebutted. Furthermore, as has been noted by the Government, there was no evidence offered in the nature of expert testimony that the strategy adopted by Smith, in light of the evidence presented, was anything other than reasonable. Both Smith and Clauss testi-

fied that, in their view, the strategy adopted was reasonable in light of the facts presented by the client and in light of the Government's version of events. Furthermore, there is no proof now that the fingerprints found on the weapon were not in fact Aquino's. In this motion, Aquino makes no claim that had Smith retained an expert, that expert would have concluded that the prints found on the firearm were not his.

Aquino's present claims of ineffective assistance appear to be nothing more than second-guessing after the jury returned its guilty verdict. Obviously, just because the verdict was not to Aquino's liking, is not a basis for concluding that counsel's assistance was ineffective.

Aquino's present claim of dissatisfaction with Smith is a far cry from his statements about Smith on the eve of trial. Aquino had raised some concerns about trial strategy and the Court discussed these issues with Aquino and his attorney a few days before jury selection. Aquino was concerned that some of the officers had improperly taken money from some of the occupants of 88 Radio Street on the night in question, and he wanted counsel to cross-examine them about the matter. Aquino expressed a desire to pursue this at trial, but his lawyer thought that such a tack might lead the jury to conclude that 88 Radio Street was a "drug house." (Tr., p. 7–9).[2] Both Smith and the Court pointed out to Aquino that Smith had labored to keep the drug activity of others out of the trial so that Aquino was not prejudiced by that association. (Tr., p. 9). It was certainly a matter of sound trial strategy and, in fact, there was virtually no reference to

drug activity in the testimony presented to the jury.

Eventually, Aquino seemed satisfied that the allegations against the officers could be pursued elsewhere and he withdrew his request that Smith be relieved as counsel for not pursuing the matter. (Tr. p. 16–17).

It is clear from the Court's discussion with Aquino that although he was concerned about Smith's strategy concerning impeaching the officers, he was fully satisfied with Smith in all other respects. Twice during this discussion Aquino sang Smith's praises. After the Court advised Aquino that Smith and lawyers from the Federal Public Defender had appeared before the Court many times and that they were highly qualified (Tr., p. 4), Aquino replied as follows:

> The Defendant: Your Honor, let's see how I am going to do this, first of all, I'm very happy with Mr. Smith's representation. I agree with you one hundred percent. I couldn't ask for a better lawyer. (Tr. p. 5).

Later, Aquino reiterated his confidence in Smith.

> The Defendant: Your Honor, again, I couldn't ask for a better attorney than Mr. Smith. He's—I'm happy in all aspects, ... (Tr., p. 13–14).

In the several versions presented by Aquino to his attorney during trial preparation, all included the fact that Aquino admitted handling the firearm. The thrust of the defense was to explain Aquino's handling in such a way as to negate the requirements necessary for willful and knowing possession.

---

**2.** "Tr." signifies the transcript of a court hearing on October 22, 1999, consisting of nineteen pages.

The jury obviously chose to disbelieve Aquino's tale as to how he came upon the firearm. I found his story not only unconvincing but also false and perjurious. Based on that finding at sentencing, I granted a two-point enhancement for obstruction of justice. I found "by a clear and convincing evidence that Aquino did perjure himself, did provide false testimony certainly on a material matter with the willful intent to provide that false testimony. I find that it was not a result of any confusion, mistake or faulty memory." (TS., 7–8).[3]

Based on my view of the evidence and my observations of Aquino at trial, I determine that the version of events as recounted by Aquino was "fanciful" and "manufactured" in an attempt to explain the fingerprints on the firearm. (TS., p. 8).

In sum, Aquino has not overcome the strong presumption that counsel provided adequate assistance and that the now-challenged actions constituted sound trial strategy. I do not find that Smith's performance was deficient, and I find that his trial performance was within an objective standard of reasonableness and that it met prevailing professional requirements.

This is especially so concerning the fingerprint issues raised here. Virtually from the day of his arrest, Aquino acknowledged to his several lawyers that he had touched the firearm. Smith's efforts, in light of the evidence presented and Aquino's desire to testify in order to explain that "touching" was reasonable.

I find that none of the matters set forth by Aquino in his submission after the hearing, whether considered separately or together, warrants the relief requested. I come to the same conclusion with reference the items set forth in Aquino's first filing (Dkt.# 55).

Aquino has failed to establish that counsel's performance was deficient and has also failed to demonstrate how he was prejudiced. To obtain relief, a defendant must demonstrate that the result of the trial would have been different but for counsel's alleged errors. I have considered all of the trial evidence, including Aquino's own testimony, and I am not convinced that Aquino has established prejudice.

## CONCLUSION

Defendant's motion for a new trial based on ineffective assistance of counsel (Dkt.# 55) is denied.

Resentencing is scheduled for March 12, 2002 at 2:00 p.m. Any objections to the presentence report or any other submissions relating to sentencing must be filed by March 6, 2002.

IT IS SO ORDERED.

---

**3.** "TS" signifies the transcript of the sentencing proceedings on February 11, 2002, consisting of thirty-one pages.